1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3              WESTERN DIVISION

4    THE HONORABLE DALE S. FISCHER, JUDGE PRESIDING

5

6  UNITED STATES OF AMERICA,          )
                                      )
7                      Plaintiff,     )
                                      )
8            vs.                      ) NO. CR 15-95 DSF
                                      )
9  RICHARD DOUGLAS LATKA,             )
                                      )
10                     Defendant.     )
   _____)

11

12

13

14         REPORTER'S TRANSCRIPT ON APPEAL

15            Los Angeles, California

16

17      Monday, October 26, 2015, 9:32 A.M.

18

19            Pretrial Conference

20

21                          PAT CUNEO CSR 1600, CRR-CM
                            Official Reporter
22                          Royal Federal Building
                            255 East Temple Street
23                          Room 181-E
                            Los Angeles, CA  90012
24                          213-894-1782
                            patcuneo1600@gmail.com
25                          www.patcuneo.com

```
1    APPEARANCES:

2    FOR THE PLAINTIFF:    EILEEN M. DECKER
                           UNITED STATES ATTORNEY
3                          BY:  CHRISTOPHER C. KENDALL
                           and  CASSIE D. PALMER
4                          and  JENNIFER L. WILLIAMS
                           ASSISTANT UNITED STATES ATTORNEYS
5                          United States Courthouse
                           312 N. Spring Street
6                          Los Angeles, California 90012

7    FOR THE DEFENDANT:    KAYE, McLANE, BEDNARSKI & LITT
                           BY:  MARILYN E. BEDNARSKI
8                          and  CAITLIN WEISBERG
                                ATTORNEYS AT LAW
9                          234 E. Colorado Boulevard
                           Suite 230
10                         Pasadena, California  91101
                           626-844-7660
11                         mbednarski@kmbllaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 26, 2015; 9:32 A.M.
 2                              -oOo-
 3            THE COURT:   You may be seated.
 4            THE CLERK:   Calling CR 15-95, United States of
 5   America vs. Richard Douglas Latka.
 6            MS. PALMER:   Good morning, Your Honor.
 7   Cassie Palmer and Chris Kendall for the United States, and
 8   along with us at counsel table is Jennifer Williams.
 9            THE COURT:   Good morning.
10            MS. BEDNARSKI:   Good morning, Your Honor.
11   Marilyn Bednarski present with Caitlin Weisberg.  We're here
12   representing Mr. Latka who's not yet present.
13            THE COURT:   Good morning.
14                  (Pause in the proceedings.)
15            MS. BEDNARSKI:   Your Honor, Mr. Latka just asked
16   me if he would be able to take some notes this morning; and
17   in that regard, he'd ask that his restraints be removed from
18   his hands.
19            THE COURT:   Any problem with that?
20            U.S. MARSHAL:   No, Your Honor.
21            THE COURT:   Okay.  That's fine.
22            THE DEFENDANT:   Thank you, Your Honor.
23            THE COURT:   You're welcome.
24                  (Pause in the proceedings.)
25            THE COURT:   Well, obviously, we were all working
```

1   over the weekend.  I was not -- I did intend to spend my

2   weekend working but not necessarily on all of the things

3   that were dumped on me between Friday and this morning.

4           So I'm not sure whether we're ready to start trial

5   or not.  What is the government's position?

6           MS. PALMER:  Your Honor, the government is

7   prepared.

8           THE COURT:  You have your witnesses all available?

9           MS. PALMER:  Yes, Your Honor.

10          THE COURT:  All right.

11          Ms. Bednarski?

12          MS. BEDNARSKI:  There are important issues that

13  will need to be decided with respect to the scope of

14  Dr. Victoroff and the scope of Dr. Faerstein, and

15  Ms. Weisberg is prepared to argue those motions to the

16  Court.

17          I think we're probably ready on just about --

18  well, I would say the lawyers are probably ready on the

19  other matters with respect to voir dire and jury

20  instructions and exhibits and witnesses and all those

21  things.

22          I think the government underestimated the length

23  of the trial the other day when it said one day.  I just

24  can't even possibly see how that's the case but -- so I

25  don't think counsel --

THE COURT:  It said, I think in the papers, one to two days not including cross-examination so I --

MS. BEDNARSKI:  All right.

MS. PALMER:  Yes, Your Honor.  I've been doing this since breakfast.  So what I meant was our witnesses, our directs of our witnesses and that's all.

THE COURT:  Okay.

MS. BEDNARSKI:  And with regard to starting the trial tomorrow, I'm sure even without having had the opportunity to talk to Mr. Latka that would be his desire.

I've not updated him, since he just came into the courtroom, on what's going on with the experts.  But I know, you know, he's been in custody a long time and he's been looking forward to this day and I'm sure would like it to start tomorrow.

THE COURT:  All right.  Have any additional offers been made since the last time we were here, Ms. Palmer?

MS. PALMER:  No, Your Honor.

THE COURT:  All right.

I mentioned the last time we were here making an opening statement either before or after voir dire.  Your choice.  I don't think there's enough going on in this case to do a mini-opening; but I'll ask Ms. Bednarski:  Do you have a preference?

MS. BEDNARSKI:  I don't.  I am fine either way.  I

1    do think that if -- we did file last night the parties --

2    and we could not come to an agreement on the statement of

3    the case.

4         THE COURT:  I mean, you guys can't come to an

5    agreement on what day it is.

6         MS. BEDNARSKI:  Pretty much.

7         THE COURT:  Which is not really the way I like to

8    see matters handled because it seems to me there certainly

9    should have been things that you could have agreed to.

10         But with regard to the jury instructions, maybe

11    that was my fault.  I don't know if the government was just

12    objecting to your proposed objections because of the

13    language in my trial order which I probably should change.

14         But in any event, there's -- and I don't think

15    it's not that you're being professional, I just -- it's

16    something else.  But in any event, I did see the disputed

17    statement and I probably should look again.

18                    *(Pause in the proceedings.)*

19         THE COURT:  And "criminal threat" is a state court

20    term.  Is there some reason you used "criminal threat"?  I

21    mean, it is a crime if it happened but --

22         MS. BEDNARSKI:  We've been wrangling with this

23    concept of not all threats are criminal because of the First

24    Amendment and because of the requirement that it be serious

25    and because of the requirement that it be made with certain

1    intent.

2             So I think that's how we sort of ended up trying

3    to deal with that without being more wordy.

4             MS. PALMER:  Your Honor, the government's position

5    is that it should be the mens rea that actually applies to

6    this statute which would be intentional or knowing to the

7    extent that we were to include a mens rea.

8             Also, the section that says Mr. Latka denies

9    making a criminal threat, he's pleaded not guilty; and given

10   that the defense will not put on their case or is not

11   committed to putting on a case until after the government's

12   case-in-chief, it would allow the defendant basically to

13   testify that he denies it.  That's why we opposed it.

14             THE COURT:  All right.

15             Well, I'll probably tweak both of them.  I am not

16   going to -- I'm certainly not going to preclude you from

17   referring to him as "United States Forest Service Law

18   Enforcement Officer C.E." and I don't know really why we

19   have to be using his initials; but if that's what you want

20   to do, fine.  I understand he's the alleged victim.  But

21   those words are not going to come out of my mouth.

22             MS. PALMER:  That's fine, Your Honor.

23             THE COURT:  Okay.

24             And then once you say whatever you're going to

25   say, then just call him "Officer C.E."  My title is United

1   States District Judge for the Central District of California

2   but nobody says that every time they introduce me --

3           MS. PALMER:  Yes, Your Honor.

4           THE COURT:  -- or mention me.  So I will put some

5   form of this in the comments.

6           Do you have any strong feelings one way or the

7   other about voir dire before or after the opening statement?

8           MS. PALMER:  I think that we would prefer after,

9   Your Honor, but it's not a strong feeling if the Court has a

10  different preference.

11          MR. KENDALL:  Sorry to clarify.  I think it would

12  be better to have opening after the voir dire.

13          MS. PALMER:  Right.

14          THE COURT:  That's what she said.

15          MR. KENDALL:  I think the way she phrased her

16  sentence was reversed.  But just to be clear, I think we'd

17  like the voir dire followed by the opening.

18          THE COURT:  Okay.  The two of you're not going to

19  be popping up and down all through the trial.  One of you is

20  going to do each thing.

21          MR. KENDALL:  That is correct, Your Honor.  We'll

22  have our single witnesses.

23          THE COURT:  Yes.  Same for the defense.

24          And, Mr. Kendall, you have a tendency to talk too

25  much.  Stop doing that.

1          MR. KENDALL:  Yes, Your Honor.

2          MS. BEDNARSKI:  Your Honor, may I ask a

3  question --

4          THE COURT:  You may.

5          MS. BEDNARSKI:  -- about the initials C.E.?

6          Most of the witnesses seem to know him as

7  Ellsworth with respect to, you know, all the deputies.

8          THE COURT:  You know, other than children, which

9  even then I think we used their names during the trial I

10  had, so it doesn't make any sense to call him C.E. during

11  the trial.

12          MR. KENDALL:  Okay.

13          MS. BEDNARSKI:  Thank you.

14          MR. KENDALL:  Yes, Your Honor, and we spoke to

15  Officer Ellsworth; and he is also comfortable so we were

16  planning on calling him Chad Ellsworth or Officer Ellsworth.

17          THE COURT:  Okay.  Again, you talk too much.  I

18  just said we're going to call him Chad Ellsworth.  I don't

19  need to hear anything else from you on that topic.

20          Generally, if I make a statement or an order, I

21  don't really care whether it's okay with you.  If you have

22  an objection to something I've said, you can state it.  But

23  if you're agreeing with it, we don't really need your

24  help --

25          MR. KENDALL:  Yes.

| | |
|---|---|
| 1 | THE COURT:  -- unless you think that it's |
| 2 | something on which I had to make findings and I did not do |
| 3 | an adequate job. |
| 4 | MR. KENDALL:  Yes, Your Honor. |
| 5 | THE COURT:  Thank you. |
| 6 | All right.  So back to you, Ms. Bednarski.  Did |
| 7 | you say you don't have a preference? |
| 8 | MS. BEDNARSKI:  I do not.  I've done it either way |
| 9 | and whatever the Court prefers is fine. |
| 10 | THE COURT:  Okay.  Well, I think it would be |
| 11 | better before to give the jury a better idea of what the |
| 12 | case is about; but I can do that with this short statement |
| 13 | one way or the other.  So I will give it after the voir |
| 14 | dire. |
| 15 | Okay.  I added to the list of witnesses |
| 16 | Alfredo Morales.  I don't really -- I say witnesses who will |
| 17 | be called or other names you will hear mentioned.  So I |
| 18 | assume they'll hear the name Alfredo Morales mentioned. |
| 19 | I don't want anybody popping and saying:  Oh, yes, |
| 20 | I know good old Alfredo. |
| 21 | And then there is Mr. -- is it Briot? |
| 22 | MS. PALMER:  Mr. Briot.  Yes, Your Honor. |
| 23 | THE COURT:  Briot.  Okay. |
| 24 | And are we going to hear his name or will he be |
| 25 | called possibly? |

1          MS. PALMER:  Not by the government, Your Honor.  I

2     believe that -- my understanding is that he has been

3     subpoenaed by the defense.

4          THE COURT:  Okay.  Then better to be safe than

5     sorry.

6          Ms. Bednarski, have you had an opportunity or,

7     Ms. Weisberg, to look at the list of exhibits?

8          MS. BEDNARSKI:  I have not seen any exhibits from

9     the government.  Did they file something since 9:00 o'clock

10    last night?

11         THE COURT:  No.  It was before that.

12         MS. BEDNARSKI:  Okay.

13         THE COURT:  It's on the docket.

14         MR. KENDALL:  Your Honor, may I?

15         THE COURT:  Sure.

16              *(Pause in the proceedings.)*

17         MS. PALMER:  Your Honor, one issue with respect to

18    the witness lists, we had given notice under 902.11 and so

19    far we have no objections so I just wanted to confirm that

20    to ensure that we don't have to bring in those two

21    custodians of record.

22         THE COURT:  Which records are those?

23         MS. PALMER:  Those are the receipts and also the

24    911 call.  The receipts from Lowe's.

25         MS. BEDNARSKI:  Your Honor, with respect to the

1    911 call, I believe they're only speaking about Mr. Latka's

2    911 call; is that correct?

3              MS. PALMER:  Yes, that's correct.

4              MS. BEDNARSKI:  All right.

5              And I don't have an objection to either of those

6    two things.  They also gave some sort of notice about jail

7    phone calls and, of course, I will have an objection to

8    those; and I just ask that before anything like that comes

9    up that we have an opportunity to talk with the Court about

10   what they intend to use.

11             It may not.  We don't know why they would have put

12   those on the list or gotten the business records subpoenaed

13   for them or whatever else.  But given that they're

14   statements of the defendant, obviously, I would be sensitive

15   to it.

16             So I would just ask to have some indication prior

17   to actually playing any of those or listening to any of

18   those statements about what those statements of the

19   defendant are.

20             THE COURT:  Okay.  So let's just make clear.  We

21   don't need a witness to authenticate the Lowe's receipts and

22   they'll come in without an objection at least as to

23   authenticity.

24             MS. BEDNARSKI:  Yes.

25             THE COURT:  And the same for the 911 call that was

1    made by Mr. Latka?

2                 MS. BEDNARSKI:  Yes.

3                 THE COURT:  Have you seen the transcript?

4                 MS. BEDNARSKI:  We worked out an agreed-upon

5    transcript.

6                 THE COURT:  Excellent.

7                 What about these MDC calls?

8                 MS. PALMER:  Your Honor, those would only be for

9    impeachment purposes assuming that the defendant testifies.

10                 THE COURT:  Okay.

11                 And do you know what those are, Ms. Bednarski?

12                 MS. BEDNARSKI:  I know there are two months of MDC

13   calls but they have not identified what in particular they

14   would try to use.

15                 THE COURT:  Okay.

16                 Because it's for impeachment presumably.

17                 MS. PALMER:  Yes, Your Honor.

18                 THE COURT:  All right.  So when you get a chance,

19   Ms. Bednarski, take a look at the list of exhibits.

20                 I assume you've given the government all the

21   actual exhibits, Ms. Palmer?

22                 MS. PALMER:  Yes.  It's all in the discovery.

23                 THE COURT:  Okay.  All right.  So --

24                 MS. BEDNARSKI:  Your Honor, we'd --

25                 THE COURT:  Well, you know, to say they're all in

1 the discovery is not helpful.  There's a ton of photographs

2 and I forget what other category.  There's a lot of things.

3          Unless you point out what Bates number or what

4 other, that's not helpful.

5          MS. PALMER:  Yes, Your Honor.  We have not done

6 that.  We will do so.

7          THE COURT:  Okay.

8          All right.  So the government said it might have

9 to call three foundational witnesses that would relate to

10 the receipts and the 911 call.  Was there a third one?

11          MS. PALMER:  The third one would only be with

12 respect to the jail calls.

13          THE COURT:  All right.

14          As I have indicated before, I'm not sending the

15 Indictment to the jury room.  I do now have the brief

16 statement that I will take a little bit from each probably.

17          And the government, I think, suggests in its trial

18 brief that I had not yet ruled with regard to Briot.  I have

19 indeed ruled.  It's an in camera ruling.

20          Do you have that, Ms. Bednarski?

21          MS. BEDNARSKI:  I do.

22          THE COURT:  All right.

23          So I assume that you will not be violating that

24 then?

25          MS. BEDNARSKI:  That's correct.

1    THE COURT:  There was also, when the FPD was

2  involved, some motion and some discussion about jury

3  nullification, references to sentencing, charging decisions,

4  that kind of thing.  Are you aware of that, Ms. Bednarski?

5    MS. BEDNARSKI:  I am.

6    THE COURT:  Okay.  And I assume you will not be

7  doing anything improper in that regard?

8    MS. BEDNARSKI:  That's right.

9    THE COURT:  Excellent.

10    The FPD said something about -- I don't know -- it

11  might have related to charging decisions; and I suggested if

12  there was something that there was going to be an issue

13  about, that defense talk to the government about it or at

14  least, alternatively, in an in camera filing advise me of

15  what that is likely to be.

16    The Indictment in this case, unlike many, is

17  equally useless and harmless so, as I said, I won't provide

18  it.  I will tell the jury what the charge is.

19    Now, we had much too much briefing and many too

20  many problems with our experts at the very last minute so

21  I'm going to push -- probably will continue even beyond the

22  last minute so I will do the best that I can.

23    But I'm not sure that we've advanced a whole lot

24  from the initial very lengthy letter, although we now do

25  have numbered paragraphs with opinions.

1        Some of them, I am not really sure how they're

2   relevant and I guess I will hear that perhaps more during

3   the testimony.

4        I know there's this major issue about gun versus

5   taser which doesn't have anything to do with the actual

6   charge because you can't threaten to assault or murder a

7   federal law enforcement officer even if he pulls a gun on

8   you.

9        So I'm not sure what that's about but I guess

10  there's some tangential relevance based on the reaction and

11  what happened after that.

12       So Items 1 through 10 are basically all to say the

13  defendant has mental health issues.  That alone, of course,

14  would not be admissible so I assume that's all background

15  opinions to explain some opinion that he has that will move

16  this thing forward.

17       MS. PALMER:  I'm sorry, Your Honor.  Did you mean

18  1 through 9?

19       THE COURT:  I might.

20       MS. PALMER:  Oh, sorry.  Opinions.  I'm sorry.  I

21  was going to the facts.

22       THE COURT:  No.  Opinions.

23       Okay.  Has he testified before as an expert,

24  Ms. Bednarski?

25       MS. BEDNARSKI:  Dr. Victoroff?

1          THE COURT:   Yes.

2          MS. BEDNARSKI:   I believe in state court.   I don't

3     think he's ever testified in federal court.

4          THE COURT:   Okay.

5          MS. BEDNARSKI:   He's really an academic.

6          THE COURT:   I can tell that.

7          MS. BEDNARSKI:   Yes.

8          THE COURT:   And so --

9          MS. BEDNARSKI:   I think the public defender chose

10    him because he had this experience in traumatic brain injury

11    but, obviously, it's more difficult to deal with an academic

12    than somebody who's, you know, skilled in the courtroom in

13    forensics.

14          THE COURT:   Yes, indeed.

15          And I know that he obviously is Mr. Latka's choice

16    as well, or at least that was the discussion we had some

17    time ago before you were appointed but -- and I'm not going

18    to tell you how to try your case because you may well have

19    tried more than I've even presided over, though I've

20    presided over a lot.

21          So I'm sure you will help him figure out how to

22    make this somewhat more understandable than the opinions.

23          But I think for No. 11, I think if one were to

24    distill it, I think he's saying that perhaps Mr. Latka --

25    and I may be interpreting this incorrectly, but I'm not sure

1    it's all that critical -- that Mr. Latka doesn't know how to

2    act around people and he has difficulty controlling himself.

3    So I think that the jury can do something with that

4    evidence.

5            He also says that he has diminished social

6    sensibility -- I don't actually know what that means -- but

7    lacks insight into how people are responding to him I think

8    maybe is the most salient opinion so that makes it certainly

9    relevant.

10           And I will admit I'm not -- I was looking at the

11   cases that you have cited, Ms. Bednarski, with regard to

12   Dr. Faerstein's report which is a whole different issue and

13   is somewhat grasping as to what is and is not admissible

14   testimony from an expert in a criminal case; but I hope I

15   will know it when I see it.

16           12, impulsive and lacking in self-control, talking

17   loud, et cetera.  I think that makes sense in this context,

18   I guess, as an alternative to what a jury might otherwise --

19   how the jury might otherwise view that conduct.

20           I'm not sure -- he says "abnormal perception of

21   threats from others."  I'm not sure how that's relevant, but

22   I don't think I have any objection to it so. . . .

23           Rigid and inflexible thinking, can't respond

24   appropriately.  He would advance rather than retreat.

25   That's the one you say that you're not going to use now?

1          MS. BEDNARSKI:  Right.

2          THE COURT:  Okay.

3          He's not oblivious -- he's oblivious to the

4   responses of people with whom he's communicating.

5          Does that not go to mental state?

6          MS. BEDNARSKI:  Are you asking us?

7          THE COURT:  Yes.

8          MS. BEDNARSKI:  It's Ms. Weisberg's area.

9          THE COURT:  She may certainly argue that.

10         MS. BEDNARSKI:  Very well.  Thank you, Your Honor.

11         MS. WEISBERG:  Are you asking from the perspective

12   of the expert not being able to testify as to the ultimate

13   mental state?

14         THE COURT:  Yes.

15         MS. WEISBERG:  I think that he -- if the opinion

16   is that he's oblivious to the responses that he generates, I

17   hadn't thought about that specifically; but I think he's

18   intending it as more of a general matter and not as an

19   absolute.  He does not -- never understands the responses

20   that others would generate in response to him.

21         THE COURT:  All right.  Well, if the government

22   doesn't object, I don't have a problem with it; but that one

23   was getting a little bit -- kind of close to the mental

24   state that was required in the elements.

25         And then the last one, he doesn't have antisocial

1  personality disorder or psychopathy.  I suppose that's good

2  news but so what?  I mean, is somebody claiming he does?  Is

3  that going to be evidence that he does that would somehow be

4  relevant?

5      MS. WEISBERG:  Yes, Your Honor.

6      Dr. Faerstein had mentioned previously the

7  possibility of antisocial personality disorder so that was

8  anticipating, you know, a cross-examination point perhaps or

9  something else.

10     THE COURT:  Okay.  But in the absence of -- I'm

11  not sure how much Dr. Faerstein is going to be able to say.

12  But you said something you think Dr. Faerstein is going to

13  testifying to or that you plan on questioning Dr. Victoroff

14  about that?

15     MR. KENDALL:  I think it may be another

16  explanation for some of his behaviors and so Dr. Faerstein

17  may try to explain that.  Perhaps it wasn't a brain

18  disorder.  You know, it's based on his long experience.  It

19  wasn't the brain disorder that was causing these behaviors

20  but, rather, his antisocial disposition generally speaking.

21     THE COURT:  Okay.

22     MS. WEISBERG:  And, Your Honor, just to clarify,

23  we would not be eliciting that on direct.

24     THE COURT:  Okay.

25     All right.  Well, you've given me 114 facts which

1  Dr. Victoroff will rely which is really not what I was

2  thinking I was going to be getting.  In addition, I was

3  thinking I was going to be getting it several months ago.

4          So I will do my best to go through them.  If I

5  just briefly read your papers correctly, there's only 70

6  that the government objects to?

7          MS. PALMER:  Yes, Your Honor; and I wanted to

8  clarify.  It's not the government is saying he cannot rely

9  on these facts.  It's that he wants to --

10          THE COURT:  I understand.

11          MS. PALMER:  Okay.  I'm sorry.

12          THE COURT:  Yes.  To the extent that he will

13  testify that these are the kinds of things that experts in

14  his field rely on, he can certainly rely on them; and I'm

15  sure Ms. Bednarski, with all her years of experience, knew

16  that full well.

17          She was just making the litigator's argument and

18  you need to get used to that.  It's going to happen in every

19  single case especially with really good lawyers as

20  Ms. Bednarski is.

21          I will just have to sort out which is which.  But

22  I'm not -- I mean, we don't have time.  I'm not going to sit

23  here and listen to 114 background facts.

24          So that's part of the reason why I asked if

25  Dr. Victoroff had testified before; and if I knew who the

1  judge was, I might have a better idea about whether that

2  judge had just let Dr. Victoroff drone on and on or whether

3  that judge had perhaps given him some instructions as to how

4  to move along.

5       But certainly he's not going to sit there and go

6  through each and every one of those facts.  First of all,

7  they will make zero difference to the jury even if he says:

8  And I did the following 400 tests.  It's not going to move

9  his opinion forward.

10       So I think for some of the things he would be able

11  to and still have effective testimony and will be ordered

12  to -- at least he can summarize them; but I don't think he

13  needs to be -- for example, I don't think he needs to list

14  each and every one of -- I think it was Dr. Buddig's tests.

15       You know what I mean, Ms. Bednarski, and you don't

16  want to bore the jury to tears with stuff that's going right

17  over their heads so they miss the important stuff.

18       MS. BEDNARSKI:  Right.

19       THE COURT:  So I will get to those as soon as I

20  can; but, generally, my view is he is not going to be a

21  mouthpiece for Mr. Latka.  He is not going to be saying what

22  Mr. Latka said to him.

23       I haven't looked at the actual statements so I

24  suppose there might be something in there that I would

25  allow.

1          Nor is he going to be saying something that,

2   although he doesn't repeat precise words, really implies to

3   the jury something that Mr. Latka has said unless, of

4   course, Mr. Latka takes the stand first and testifies which

5   is totally up to him.

6          That's, as I recall from state court -- and I

7   don't know, Ms. Bednarski.  I assume the rule is the same

8   because probably it's a constitutional rule.  But that is

9   the one choice that is his and his alone whether to testify.

10         MS. BEDNARSKI:  It is.

11         THE COURT:  All right.

12         And so I'm sure you will discuss that with him and

13   he will make that decision at the appropriate time.  But as

14   I say, the testimony is not going to be coming in through

15   Dr. Victoroff.  It's just not.

16         That would be clearly more prejudicial than

17   probative and would allow him to submit all of the facts in

18   this case without subjecting himself to cross-examination.

19         And since there's -- it appears that Dr. Faerstein

20   won't be able to testify to his views or his statements.

21   I'm not really sure about that.  I'm not sure I'm reading

22   12.2 the way you are, Ms. Bednarski.

23         But I haven't had a chance to do more research or

24   have my clerks look at that yet; but we'll assume for the

25   moment Dr. Faerstein won't be -- certainly Dr. Victoroff

1    can't sit here and talk about how credible Mr. Latka is and

2    all the things he said.

3            And then we can't have the only other person who's

4    talked to him hamstrung and not be able to testify to the

5    same thing.  So that just doesn't work.

6            MS. WEISBERG:  Your Honor, if it helps clarify,

7    the facts that Dr. Victoroff was communicating about the

8    case for Mr. Latka are at the very end of the list; and the

9    defense has agreed that Dr. Victoroff won't testify as to

10   any statements the defendant made about this incident.

11           THE COURT:  Okay.  So maybe you could, before you

12   leave, write down those numbers so I don't bother with them.

13   Then I can just focus on the other ones.

14           MS. WEISBERG:  I will.

15           THE COURT:  Okay.

16           And the government suggested something about a

17   limiting instruction, but that kind of testimony couldn't be

18   dealt with, with a limiting instruction.

19           I'm sure they're in there somewhere, the issue of

20   the defendant's wife's rape.  When did that occur?

21           MS. BEDNARSKI:  1981.

22           THE COURT:  Okay.

23           All right.  Lots of other family problems.  I'm

24   not sure that those can't just be, again, summarized as

25   family background and described in an appropriate way; but

1    I'll take a look at those more closely.

2           And Dr. Victoroff did -- and I'll have to go back

3    and read it more carefully -- he did at one point say that

4    it was hard to or he couldn't determine as to what

5    particular aspects caused what or added to what, contributed

6    to what.

7           So it's a little vague about how important various

8    things were, and it's not clear that one can even tell that.

9           I don't think the defendant is claiming or that

10   Dr. Victoroff is claiming that this disorder or issue is

11   new, is he, Ms. Weisberg?

12          MS. WEISBERG:   No.   That is not my understanding

13   as well.

14          THE COURT:   Okay.

15          All right.   Dr. Faerstein, I guess the bottom line

16   is I can't rule on the motion to exclude until I hear what

17   Dr. Victoroff says and, if Mr. Latka testifies, what he

18   says.

19          But he certainly can't opine -- I do think that

20   Ms. Bednarski's suggestion that he was listing opinions in

21   the form of your closing argument was pretty close to the

22   mark and that in some cases experts can do that but not in

23   this one.

24          So he can't be opining that Mr. Latka could indeed

25   form the intent to threaten or that he did form the intent

to threaten.  So I think -- and I don't know how that -- I
mean, Dr. Faerstein's -- I don't know if I've ever heard him
testify; but he certainly is a name one hears often and a
well-respected expert and somebody knows better than to
think that that testimony is going to come -- that those
opinions are going to come in, in that form and perhaps not
at all.

          And many of them, as Ms. Bednarski points out,
don't seem to have much relationship to expertise.  Maybe
people with psychology or psychiatry expertise know these
things, but much of what he was saying we all know.

          So I know much of it is not going to really help
the jury even if it's admissible.  So I think you need to
take a hard look at Dr. Faerstein's opinions and perhaps
whittle them down and you may not be able to do all of it
until after you hear Dr. Victoroff.  But, certainly, much of
what he said is not coming in.

          MS. WEISBERG:  Your Honor, in that regard?

          THE COURT:  Yes.

          MS. WEISBERG:  It was my understanding that one of
the reasons that Dr. Victoroff was required to give this
supplemental statement of his opinions was that the
government needed ahead of time a full and complete
understanding of what his opinions were and what he would
testify to; and I thought that the rule was the same for the

1  government experts.

2          THE COURT:   That was not true.

3          MS. WEISBERG:   Okay.

4          THE COURT:   The reason I said that was because I

5  have Dr. Victoroff's report and I had a specific concern

6  about Dr. Victoroff.  I had a specific concern about the way

7  the motion had been submitted, and there was a whole lot

8  that I knew of at the time just from what I had seen that I

9  thought was going to be problematic.

10          And I thought, honestly, Dr. Victoroff was going

11  to be problematic because I had gleaned that he was not

12  someone who regularly testified as he's not a forensic

13  expert.  So it was directed toward him.

14          Now, that doesn't mean that you can't object to or

15  that it wouldn't be a good idea if there are issues,

16  evidentiary issues, that are problematic with regard to

17  facts that I wouldn't like to see what Faerstein is going to

18  testify to with regard to the facts.

19          But if he can't testify to any statements, that

20  takes care of that whole category.  Your position is on most

21  of the medical stuff he's going to testify consistently with

22  Dr. Victoroff and, therefore, he's not necessary.

23          I'm not sure the government doesn't get to call

24  him just because he's going to agree with things but it

25  is --

1          MS. WEISBERG:  Well, just to clarify, Your Honor.

2    I was actually more concerned about Dr. Faerstein's opinions

3    because if he's going to offer opinions that haven't been

4    included in his report, we would obviously want to know that

5    ahead of time.

6          THE COURT:  He's not going to be offering opinions

7    that aren't included in his report.  That's the whole

8    purpose of a report.

9          MS. WEISBERG:  All right.  Thank you, Your Honor.

10         THE COURT:  All right.  The jury voir dire, did

11   you have comments, concerns, problems?

12         MS. BEDNARSKI:  I'm agreeable with the voir dire

13   that the Court sent over the weekend which seemed to be a

14   synthesis of both parties and I have no objection.

15         THE COURT:  All right.

16         MS. PALMER:  The government also has no

17   objections, Your Honor.

18         THE COURT:  Excellent.

19         Okay.  What about the verdict form from which I

20   will remove the constant reference to United States law

21   enforcement officer?

22         Have you had a chance to look at that?

23              (Pause in the proceedings.)

24         MS. WEISBERG:  Yes, we have had a chance to look

25   at that, Your Honor.

1        The questions themselves we don't have an

2   objection to.  We have objections to the unanimity

3   instruction and to the introduction to the verdict form

4   which we don't think is very clear or -- and has other

5   problems.

6        THE COURT:  All right.  Well, it's not necessarily

7   a time-crunch; but if you have a suggestion or an alternate

8   form, you should go ahead and submit that.

9        Let's talk about the jury instructions.  I sent

10  out an e-mail last night concerning the disputed

11  instructions with my initial thoughts.

12       Why don't I hear from the government on any

13  comments that you want to make with regard to my initial

14  thoughts?

15       MS. PALMER:  Yes, Your Honor.

16       May I take the lectern?

17       THE COURT:  Sure.

18       MS. PALMER:  Would the Court like to go

19  instruction by instruction or --

20       THE COURT:  No.  I only want to hear about the

21  ones you have problems with my initial thoughts.

22       MS. PALMER:  Okay.

23       So, in general, the defense instructions with

24  respect to the threat used "and" instead of "or."  Elonis

25  makes clear that it's one or the other; that both suffice.

1    So any reference to intent -- intentional and

2  knowing or intent and knowledge should be "or" as a general

3  matter.

4    So turning first to the elements instruction, the

5  general one which is 9.  There that says "and."  The Court

6  stated that it was inclined to accept the defense

7  instruction but then accept the government's instruction

8  No. 10 which defines "threat."

9    It's --

10   THE COURT:  Wait a minute.  Stop.

11   MS. PALMER:  Yes.

12   THE COURT:  So the "and/or" is in the very -- is

13  in the fifth element of the defendant's instruction?  That's

14  what you're --

15   MS. PALMER:  No, Your Honor, in the second

16  element.

17   I'm sorry.  So -- because it should be "intended

18  to make the statement as a serious threat" or "made the

19  statement knowing that the words would be viewed as a

20  serious threat."  We don't have to prove both.  We can prove

21  intent or knowledge.

22   THE COURT:  Okay.  Do you disagree with that,

23  Ms. Bednarski, or Ms. Weisberg?

24   MS. WEISBERG:  Yes.  And the basis is that Elonis

25  was decided on sort of criminal law and statutory

1    interpretation grounds as to mens rea.

2            And the requirement of intent comes from the First

3    Amendment and it's stated in cases such as U.S. v.

4    Bagdasarian and Virginia v. Black; and so that's why it

5    wasn't the "and/or" because we were relying on First

6    Amendment principles.

7            THE COURT:  Ms. Palmer.

8            MS. PALMER:  Elonis clearly says that

9    "recklessness" may be enough and that "knowledge or intent"

10   would satisfy the statute.

11           MS. WEISBERG:  And Elonis also says that it's not

12   reaching any of the First Amendment issues.

13           THE COURT:  It could be more helpful, but I guess

14   I will just have to make the call.  So I will read the case

15   and decide what I'm going to do.

16           What else, Ms. Palmer?

17           MS. PALMER:  So the Court stated that it was

18   inclined to accept government's proposed instruction No. 10.

19   It's a little bit confusing to have broken out the elements

20   in No. 9 into -- the first three elements into separate

21   elements and then have one -- I mean, the government agrees

22   that it should only be one instruction as to the threat.

23           But, essentially, what the defense has done is to

24   break up the threat element into three which is shown in

25   No. 9.  So I don't know if, for 10, because it says "the

1  first element," I guess it would say "in the first and
2  second elements."
3  　　　　THE COURT:   Do you have your document that you
4  filed?
5  　　　　MS. PALMER:   Yes, Your Honor.
6  　　　　THE COURT:   Could you tell me the page numbers
7  because I can't --
8  　　　　MS. PALMER:   Yes, Your Honor.
9  　　　　THE COURT:   You didn't tab them for me so I
10 can't --
11 　　　　MS. PALMER:   Yes, Your Honor.
12 　　　　53.   I mean 52 is the government's proposed
13 instruction that the Court indicated it was inclined to
14 accept.
15 　　　　THE COURT:   Okay.   So what are you telling me?
16 You don't want me to use it now?
17 　　　　MS. PALMER:   No, I do want you to use it, Your
18 Honor.   Just because the defense instruction No. 9, which
19 the Court stated it's inclined to accept, breaks the
20 elements into five because they take the threat element and
21 separate it out into three different elements.
22 　　　　I think that either we would need to combine those
23 into like one element in Instruction 9 or to indicate
24 that -- to reference it back to elements one, two, and three
25 at the beginning.   Otherwise, the jury will be confused.

1          THE COURT:   So in the -- are you saying in the

2     first sentence I should just refer back not to first

3     element but --

4          MS. PALMER:   Right.

5          THE COURT:   -- the three elements.

6          MS. PALMER:   Because, basically, the first element

7     in the defense Instruction 9, which is on page 46, is --

8     states that there was a threat.

9          And then the second and third elements are teasing

10    out the threat jurisprudence which is why the government

11    hadn't included them.   So they're kind of putting out the

12    mens rea --

13         THE COURT:   "Teasing out the threat

14    jurisprudence"?

15         MS. PALMER:   Sorry.   Like elaborating on the

16    threats.

17         THE COURT:   You're not going to say that to the

18    jury, are you?

19         MS. PALMER:   Elaborating on the threats --

20         THE COURT:   Okay.

21         MS. PALMER:   -- on what a threat means and so --

22         THE COURT:   Why don't you suggest an alternative,

23    then?

24         No, not now.

25         MS. PALMER:   Okay.

1         THE COURT:   Just come back.

2         MS. PALMER:   Okay.

3         THE COURT:   Ms. Weisberg, did you have something

4    you needed to say?

5         MS. WEISBERG:   Well, just to say that I agree with

6    the confusion that it would cause but we probably disagree

7    as to the solution.

8         THE COURT:   I don't doubt it.   So you can both

9    submit one.

10        MS. PALMER:   And one other issue with respect to

11   instruction No. 9, when we were drafting our trial memo,

12   there are a number of cases that indicate that the

13   government need not prove the actual words.

14        I don't know if that's going to be something that

15   the defense is raising.   But I think that that should also

16   be included in any instruction because, of course, with

17   words said, people phrase them slightly differently.

18        And there are cases that indicate the government

19   need not prove the actual words; but that is something I

20   wanted to raise with the Court.   It was in our trial memo

21   but it was not included.

22        THE COURT:   Didn't you submit an instruction that

23   says something about that?

24        MS. PALMER:   No, Your Honor.   I'm happy to put it

25   in the revised instruction.

1          THE COURT:  There was something I saw that said

2     that but go ahead.

3          MS. PALMER:  It was in the trial memo.

4          THE COURT:  Oh, okay.  No, I think it was

5     somewhere else, too, but go ahead and submit something else.

6          MS. PALMER:  Okay.

7          As to No. 13, which is on page 68, the Court

8     stated that it was -- oh, sorry.  The Court stated it was

9     inclined to accept the defense instruction which is on page

10    69 and to add language from the government instruction that

11    the government need not prove that C.E. was a law

12    enforcement officer.

13         The government would ask that the Court add that

14    sentence but kind of combine what the first sentence of the

15    government's instruction which is "The government does not

16    have to prove that defendant knew that Officer C.E. was a

17    federal law enforcement officer."

18         And the government was asking if the Court would

19    use the last sentence so "need not prove that defendant knew

20    that Officer C.E. was a federal law enforcement officer and

21    that that inquiry is irrelevant to such a determination."

22         THE COURT:  Well, the whole thing doesn't make any

23    sense because if he didn't know he was a federal law

24    enforcement officer, how could he have intended to impede,

25    intimidate, or interfere with him while he was engaged in

1    the performance of his official duties?

2            What does that mean then?

3            MS. PALMER:   The background of the statute is to

4    protect law enforcement officers.   So he did not know that

5    he was a law enforcement officer but he needed to impede him

6    in his duties.   He knew that that person was there to

7    investigate something and that that person was an officer of

8    some sort.   He did not need to know exactly what sort of

9    officer he was.

10           And the statute -- the background on the statute

11   makes clear that it is to protect a class of persons and

12   that's why those cases have come out the way that they did.

13           THE COURT:   Okay.   I'll take a look at that, but I

14   think you're making a mountain out of a molehill here.   I

15   don't know.   I guess I may wait and see.

16           If there's any suggestion at trial that he didn't

17   know he was a law enforcement officer and that might dictate

18   how I would phrase the instruction.

19           MS. PALMER:   As to instruction No. 14, which the

20   government's is on page 73 and the defense instruction is on

21   page 74, the Court stated that it would hear argument on

22   this instruction.

23           And so the main difference -- there are two main

24   differences between these two instructions.   The first is

25   that the defense seeks to add "by means of intentional

1    threat."

2              As a preliminary matter, the government would

3    suggest that that be changed to "intentional or knowing" to

4    the extent the Court uses that "by means of" language; but

5    the government believes that that is completely unnecessary.

6              In support of the "by means of" additional

7    language, the defense cites to Cassel which is at 408 F.3d

8    622.  There the Ninth Circuit did say that a jury

9    instruction that did not have "by means of" was insufficient

10   but that's because the mens rea did not appear elsewhere in

11   the instructions.

12             Here there's an entire instruction as to the

13   threats element.  There's a separate element that reads in

14   the intentional and knowing aspect of the threat, and this

15   is an instruction that's broken off.  So it's only going to

16   the fifth element that the government must prove.

17             The government doesn't have to prove the

18   intentional threat with respect to every single element.  It

19   has to prove the intentional threat, and I think it's just

20   confusing to put the threats language into this instruction

21   when it's already been accounted for by the previous

22   instruction; and I think that Cassel makes clear that that's

23   the case.

24             At page 631 of that in the Court's discussion, it

25   talks about an instruction that would have been sufficient;

1   and in that instruction there was -- it talks -- in that

2   instruction, it's a Virginia instruction, the trial court

3   had said -- had laid out the two threats standard and

4   included the mens rea previously.

5           So that was the problem with the instruction in

6   Cassel.  So we would ask that we not add in "by means of

7   intentional threat."

8           To the extent the Court wants to add it, it would

9   be "intentional or knowing"; and then the second difference

10  is that the government thinks that the modern federal jury

11  instructions, the part about the direct proof of defendant's

12  intent is useful and that's because it's very easy for a

13  jury to get confused in a case where they have to get inside

14  the defendant's head.

15          It's very easy for me to get confused what the

16  standard is and so the government would submit that the

17  language at the end that talks about the fact that there

18  usually isn't direct proof of such things would be useful to

19  the jury.  It would be helpful and is also a statement of

20  the law -- an accurate statement of the law.

21          THE COURT:  Ms. Weisberg?

22          MS. WEISBERG:  Yes, Your Honor.

23          I think the problem with not including the

24  language about interfering, impeding, or intimidating by

25  means of threat is that it would allow the jury to find that

1    he had an intent to interfere by, you know, yelling at the

2    officer or doing other conduct.

3            Whereas it really is -- the purpose of it has to

4    be that the purpose of the threat is to interfere or impede

5    with the investigation; and that was my understanding of

6    Cassel and that's why we added that language.

7            THE COURT:   All right.

8            Do you have a problem with "intentional or

9    knowing"?

10           MS. WEISBERG:   Yes.   For the reasons I stated

11   previously about the First Amendment basis for the

12   requirement that the threat be intentional.

13           THE COURT:   All right.

14           MS. WEISBERG:   And with respect to the

15   government's final paragraph about circumstantial evidence,

16   the problem with that is really structural with respect to

17   the instructions as a whole.

18           These instructions are relatively spare on, you

19   know, the descriptions of what evidence can and cannot do;

20   and there are a lot of descriptives that the defendant would

21   have wanted to add about, you know, constitutional rights

22   and whatnot.

23           And so it puts too much emphasis on, you know,

24   lowering the government's -- or giving context for the

25   government's argument in this case.

1      THE COURT:  Well, it is the essential issue in the

2  case.

3      MS. WEISBERG:  I wouldn't disagree with that.

4      THE COURT:  Okay.

5      All right, Ms. Palmer, what else?

6      MS. PALMER:  As to instruction No. 15, the Court

7  indicated that it would use the defense version but would

8  hear argument from the government as to the use of -- use or

9  display of force language.

10     Your Honor, the government will submit on that.  I

11  tried to figure out and talk to several other colleagues.  I

12  mean, that is the language -- the Ninth Circuit's language

13  of the definition of assault.

14     But threatening to use a display of force, I was

15  trying to think how someone would actually do that; and I

16  couldn't come up with that.

17     So we're willing to submit on that; but we would

18  again note that this instruction has the "and" language so

19  it should be changed to "or."

20     Essentially, what the defense is arguing is

21  that -- I mean, if intent is the standard, then I'm not sure

22  that we would even have the knowing included; and intent is

23  not the standard under Elonis.

24     So, in any case, that also has the "or" language;

25  and then also I believe there should be a comma after

1    C.E. and then "you" should be lower case at line 8 just

2    for . . . .

3            And then as far as 16, the Court indicated that it

4    may not be able to determine what this instruction should

5    be.   The government's is on page 84 and the defense

6    instruction is on page 85.

7            One issue that the government has had repeatedly

8    with the -- with some of the instructions that the defense

9    submitted is that they changed the mens rea.

10           Here they use the term "understood and meant."

11   Again, it should be "intended or knew" or "intended and

12   knew" if the Court accepts their argument.

13           The government would submit that the Ninth Circuit

14   model is simple, straightforward.   It says that it can

15   negate the intent and that's the law.   Instruction 16 is

16   confusing.

17           And, Your Honor, one other -- I'll touch on it

18   later, actually.

19           MS. WEISBERG:   With respect to instruction No. 16,

20   the defense's problem with the model instruction was that

21   diminished capacity isn't defined; and I don't know that if

22   I were a juror I would understand what that was referring to

23   or context for it.

24           And so the defense instruction was, you know, use

25   the structure of the Ninth Circuit with additions from

1    O'Malley to try to make it more useful in the context of

2    this case.

3              MS. PALMER:  I mean, we could change the language

4    in the Ninth Circuit instruction to "mental health

5    condition."

6              THE COURT:  As opposed to "diminished capacity"?

7              MS. PALMER:  Yes.

8                   *(Pause in the proceedings.)*

9              THE COURT:  Okay.

10             All right.  One more?

11             MS. PALMER:  Yes.

12             Your Honor, I believe that the Ninth Circuit

13   instruction purposely does not use the word "expert."  It

14   has a legal significance so us as attorneys; but jurors,

15   when they hear the word "expert," it means something

16   different to them.

17             And there's a lot of case law saying that the word

18   itself and the reason there are so many gatekeeping

19   functions with respect to experts is because jurors tend to

20   assign greater weight to that testimony.

21             And so I don't think that the Ninth Circuit -- I

22   think that the Ninth Circuit intentionally left that word

23   out and I think that instruction explains what Dr. Victoroff

24   and Faerstein will be doing.

25             THE COURT:  First of all, I don't think the phrase

1    "the Ninth Circuit intentionally did something" makes sense

2    because there's 28 spots in there.

3              MS. PALMER:  Of course, Your Honor.

4              THE COURT:  And those are not the Ninth Circuit's

5    jury instructions.  They weren't prepared by the Ninth

6    Circuit judges so. . . .

7              MS. PALMER:  The committee, Your Honor.

8              THE COURT:  The committee.

9              But when I was reading it, I did have some

10   concern.  I certainly would not use it if only Dr. Victoroff

11   testified.  I wouldn't consider using it unless both of them

12   testified.

13             And I don't know what it -- I don't know that it's

14   helpful to explain and why we would put in technical,

15   scientific, or very specialized area.

16             I'm not sure why that is something the jury needs

17   to know but I'll hear from you, Ms. Weisberg.

18             MS. WEISBERG:  Again, the concern here was that

19   the Ninth Circuit model instruction, it didn't make clear

20   who the instruction was directed towards, which witness.

21             And I thought it was a little ambiguous as to, you

22   know, this only applies to people who have been qualified as

23   experts during the trial or, you know, whatever -- what

24   class of persons it applied to.

25             THE COURT:  Well, oftentimes, we don't even -- I

1    mean, qualifying happens pretty rarely but --

2           MS. WEISBERG:  Right.  But I didn't want, for

3    example, the opinions of -- well, the opinions of other

4    witnesses to be treated as expert opinions because of

5    ambiguity in the instruction.

6           The language itself comes from, you know, a

7    different model instruction.  That's why it's in there.  I

8    don't think it's -- I don't think it's necessary to say that

9    they have to be knowledgeable in some technical, scientific,

10   or very specialized area.  I was trying to stick to other

11   model instructions that would be agreeable.

12          THE COURT:  All right.

13          Well, it's nice that somebody has a big book of

14   other instructions out there; but I have to say I've been

15   steered wrong by O'Malley before.

16          So I don't necessarily think that because

17   something is in O'Malley it's a correct statement of the

18   law, much less a correct statement of the law by the Ninth

19   Circuit so I'll take a look at these.

20          Ms. Weisberg, why don't you tell me if you have

21   anything you want to add to any of this discussion.

22          MS. WEISBERG:  Do you want me to -- should I start

23   from the beginning?

24          THE COURT:  Well, I've already heard what you've

25   already said so don't repeat anything you've already said.

1    MS. WEISBERG:  All right.  I'll do my best.

2         We -- I guess I should say to start that to the

3    extent that the Court is going to use the government's

4    instruction for the No. 3 and No. 4 -- oh, No. 4 you're

5    using defendant's.

6         Number 3, which is the charge against the

7    defendant on evidence; Number 5 which is reasonable doubt.

8    You know, we would like to assert that we think that our

9    instructions are clearer and a better statement of the law

10   and don't want to waive any of those arguments.

11        And the --

12        THE COURT:  Did you find any Ninth Circuit

13   authority questioning the reasonable doubt?

14        MS. WEISBERG:  For No. 5, I have Ninth Circuit

15   authority saying that this instruction is okay; and I also

16   found Ninth Circuit authority that said that the alternative

17   language is also okay.

18        And for No. 5, which is the reasonable doubt

19   instruction on page 23 and 24, I think that the language

20   about -- that would make a reasonable person hesitate to

21   act, that has been approved by the Ninth Circuit.

22        I think it's helpful for providing context for the

23   jury's understanding of reasonable doubt; and I think the

24   last sentence of defense proposed instruction:  That if the

25   evidence in the case reasonably permits either of two

1    conclusions, one of innocence and the other of guilt, you

2    must find the defendant not guilty.

3            I think that language is particularly important in

4    this case because there will be a lot of different

5    interpretations of the evidence where the specific

6    description of what happened isn't going to vary but the

7    interpretation of what that description means is going to

8    vary a lot.

9            So I think that language is important and that

10   language has been approved by the Ninth Circuit as well.

11           THE COURT:  Why don't you send me an e-mail citing

12   those cases that you're referring to.

13           MS. WEISBERG:  Sure.  I will do that.

14           The element instructions we've already talked

15   about and I won't go over any of that before.  We would want

16   to submit alternatives for 10, 11, and 12 which are the ones

17   that have that problem with being confusing if there's one

18   versus three elements.

19           THE COURT:  Okay.

20           MS. WEISBERG:  And I think on the rest I will

21   submit.

22           THE COURT:  All right.  Thank you.

23           I have one more point, but is there anything the

24   government wants to discuss before we wrap up?

25           MS. PALMER:  Your Honor, the government has some

1    concerns about defendant's behavior during --

2         THE COURT:   That's my point so you can raise some

3    other point.

4         MS. PALMER:   Okay.

5         THE COURT:   Anything else?

6         MS. PALMER:   Nothing further from the government,

7    Your Honor.

8         THE COURT:   Ms. Weisberg or Ms. Bednarski?

9         MS. WEISBERG:   Yes, Your Honor.

10        I had a question about whether the Court was

11   intending to read preliminary instructions to the jury.

12        THE COURT:   I do have a set of preliminary

13   instructions I read.

14        MS. WEISBERG:   Okay.  Is that -- so you do not

15   need proposals from --

16        THE COURT:   I don't need initial instructions.

17        Anything else?

18        MS. PALMER:   Your Honor, I apologize.  I do have

19   one additional thing.  I don't think that I completely

20   understood the Court's process for voir dire; and I know

21   that you said that a pass doesn't count as a strike on jury

22   selection.   Sorry.

23        So if both sides pass, would that --

24        THE COURT:   If both sides pass, that's your jury.

25        MS. PALMER:   Okay.

1          MS. BEDNARSKI:  Your Honor, a few things on my
2    list.
3          THE COURT:  Okay.
4          MS. BEDNARSKI:  Okay.  The trial clothes are over
5    at the MDC.  Do I need anything by way of a note in the
6    minute order from you to bring him dressed to the marshals.
7    They're shaking their heads no.  Lots of nos.  Okay.
8          THE COURT:  Okay.  Great.
9          MS. BEDNARSKI:  The -- because I don't know when
10   the defense case will start, when I subpoenaed my witnesses,
11   I also had them, to the extent they were willing, sign an
12   agreement to appear on call and to give me phone numbers and
13   that I would give them, you know, as much notice as possible
14   and try to give them 24 hours if I can.
15         THE COURT:  That may turn out to be a lot for this
16   case.
17         MS. BEDNARSKI:  It could be.
18         And I told them -- you know, that's to save
19   people, some of whom are law enforcement officers, from
20   having to, you know, sit here from the start.
21         With respect to -- the Court previously ruled on
22   404 issues as to some prior conduct of Mr. Latka; and I
23   understand some of those things may or not be gotten into
24   with respect to the experts depending on scope and
25   everything.

1          But with respect to the government's case-in-chief

2     and the witnesses, I want to make sure that those witnesses

3     are not going to be talking about these other incidences and

4     not blurt them out.

5          A lot of people from the neighborhood are going to

6     be coming in and, apparently, you know, there was like, you

7     know, a general opinion out there that he was loud and

8     obnoxious.

9          And it's on the tip of people's tongues to get

10    into -- maybe especially Luisa Alvarez -- to get into her,

11    you know, calling 911 or whatever; and I don't want the

12    witnesses to blurt these things out.

13         So I just bring that up because I know it was

14    months ago that the Court ruled, and I think it's probably

15    worth visiting that so that we don't have problems to which

16    I have to stand up and make a motion for a mistrial.

17         THE COURT:  Do we have -- that would give

18    everybody more time to prepare for the actual trial the

19    second time.

20         Do we have any idea whether people other than the

21    witnesses are going to be coming from the neighborhood?  Is

22    this somehow --

23         MS. PALMER:  I was not aware of that and I would

24    be surprised, Your Honor.  Most of our witnesses were having

25    to help with transportation and whatnot because it being so

1    far away.

2              We have admonished all of the witnesses not to go

3    into the other acts, and they understand that they're only

4    to answer the questions that the attorneys ask them and to

5    answer the questions the attorneys ask and specifically not

6    to go into anything besides what they saw and heard that day

7    or whatever other background they're providing.

8              MS. BEDNARSKI:  Thank you.  I was not trying to

9    imply that they would be coming and packing the audience.  I

10   have no notice of that.

11             THE COURT:  Sometimes witnesses who have been told

12   not to say things start to get very stressed when they think

13   a question has actually called for that information.

14             So I think we have to have a mechanism for dealing

15   with that as well; and, certainly, it may be that the -- one

16   of the things I mentioned was if the door is opened.

17             For example, impeachment of the government's

18   witnesses for bias, then that may be something that does

19   open the door.

20             So maybe we should -- or you should sort of

21   explain that if there is a question that they don't believe

22   they can answer truthfully without violating the

23   instructions you've given them, that they need to ask for a

24   break or to speak to you or something.

25             And I'm sure whichever lawyer is questioning them

1    will do her best to phrase the questions in a narrow enough

2    way that it doesn't cause them to be concerned about that.

3    But sometimes you just can't help it.  So we'll do the best

4    we can.

5            MS. BEDNARSKI:  And then my final issue is I was

6    planning on starting exhibit numbers at 500 which seems like

7    it will work fine because the government seems to have only

8    gotten into the 200s; and I just want to make sure that the

9    Court is okay with me just choosing a number range like

10   that.

11           THE COURT:  Ms. Plato, are you okay with that?

12           THE CLERK:  Yes, Your Honor.

13           THE COURT:  All right.

14           MS. BEDNARSKI:  And then lastly, because the

15   government's exhibit list seems to list somewhere in the

16   area of 43 or 44 exhibits, it will be helpful to get those

17   binders today.

18           Normally, we get them ahead of time so that we're

19   not like trying to figure things out during an examination

20   like what an exhibit number is.

21           And, obviously, it's a lot more helpful to have

22   the exhibit numbers on the document than a Bates number; and

23   I was trying to correlate all that.

24           So maybe we could just inquire of the government

25   if they're going to produce to us exhibit books today?

1          MR. KENDALL:  Your Honor, the process of creating

2     all of them started Friday.  They should be ready today.

3     We'll get them to you as soon as we feasibly can.

4          MS. BEDNARSKI:  All right.  Thank you.

5          THE COURT:  Okay.

6          All right.  Then the final issue is, indeed, the

7     conduct of the trial and conduct of Mr. Latka at trial.

8          Mr. Latka has conducted himself appropriately

9     today with one exception, and I think it's very difficult to

10    tell what the acoustics are like in the courtroom.

11         But, Mr. Latka, for various reasons, you need to

12    really be careful when you're talking to your lawyer,

13    especially if she's got the microphone anywhere near where

14    it's going to pick up what you have to say.

15         So you don't want the jury to hear or me or the

16    government to hear any communications that you're making

17    with her.

18         You are not to make any comments at all about the

19    witnesses, the evidence.  I don't want to be able to hear

20    your voice unless I'm speaking to you or you're on the

21    stand.

22         Somewhere back there I have a memorandum about

23    when I can remove defendants from a courtroom and what I

24    have to do before that happens.  I don't want to have to

25    pull it out and read it.  I have done it before.

1      If I have to do it again, I will but it's not -- I
2   know you're very interested in this case, as most defendants
3   are, and it's not very much fun to be sitting back there
4   just listening and not seeing.
5      So I see your okay sign and your thumbs up so I
6   will assume that you get it.
7      Anything else we should discuss today?
8      MS. BEDNARSKI:   No.
9      MS. PALMER:   Not in the government, Your Honor.
10     THE COURT:   All right.
11     Unless something -- well, why don't we just come
12  back about 8:15 tomorrow.  I'm sure there will be a few more
13  things we can talk about but the jury doesn't get here until
14  a little later than that; and we'll see you again tomorrow.
15     MS. BEDNARSKI:   Thank you.
16     MR. KENDALL:   Your Honor, just one more thing.
17     THE COURT:   Yes.
18     MR. KENDALL:   In the standing order it appears
19  that after the first day the trial runs from 8:00 to 2:00
20  o'clock.  Is that the Court's intention?
21     THE COURT:   Yes.
22     MR. KENDALL:   Thank you, Your Honor.
23     THE COURT:   All right.
24     We'll take a fifteen-minute break before my court
25  reporter fires me.

1      *(At 10:45 a.m., proceedings were concluded.)*

2

3                          -oOo-

4

5                       CERTIFICATE

6

7          I, PAT CUNEO, CSR 1600, hereby certify that

8    pursuant to Section 753, Title 28, United States Code, the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is

12   in conformance with the regulations of the Judicial

13   Conference of the United States.

14

15   Date:  May 20, 2016

16

17

18

19

20                          /s/ PAT CUNEO                    _

21                          PAT CUNEO, OFFICIAL REPORTER
                            CSR NO. 1600
22

23

24

25

**MR. KENDALL: [14]** 8/10 8/14 8/20
8/25 9/11 9/13 9/24 10/3 11/13 20/14
51/25 53/15 53/17 53/21
**MS. BEDNARSKI: [48]** 3/9 3/14 4/11
5/2 5/7 5/24 6/5 6/21 9/1 9/4 9/12 10/7
11/7 11/11 11/24 12/3 12/23 13/1 13/3
13/11 13/23 14/20 14/24 15/4 15/7
16/24 17/1 17/4 17/6 17/8 18/25 19/5
19/7 19/9 22/17 23/9 24/20 28/11
47/25 48/3 48/8 48/16 50/7 51/4 51/13
52/3 53/7 53/14
**MS. PALMER: [62]**
**MS. WEISBERG: [30]** 19/10 19/14
20/4 20/21 24/5 24/13 25/11 26/17
26/19 27/2 27/25 28/8 28/23 30/23
31/10 34/4 38/21 39/9 39/13 40/2
41/18 43/17 44/1 44/21 44/25 45/13
46/12 46/19 47/8 47/13
**THE CLERK: [2]** 3/3 51/11
**THE COURT: [140]**
**THE DEFENDANT: [1]** 3/21
**U.S. MARSHAL: [1]** 3/19

**-**

**-oOo [2]** 3/2 54/3

**/**

**/s [1]** 54/20

**1**

**10 [5]** 16/12 30/8 31/18 31/25 46/16
**10:45 [1]** 54/1
**11 [2]** 17/23 46/16
**114 [2]** 20/25 21/23
**12 [2]** 18/16 46/16
**12.2 [1]** 23/22
**13 [1]** 35/7
**14 [1]** 36/19
**15 [1]** 40/6
**15-95 [1]** 1/8
**16 [1]** 41/3 41/15 41/19
**1600 [3]** 1/21 54/7 54/21
**1782 [1]** 1/24
**181-E [1]** 1/23
**1981 [1]** 24/21

**2**

**20 [1]** 54/15
**200s [1]** 51/8
**2015 [2]** 1/17 3/1
**2016 [1]** 54/15
**213-894-1782 [1]** 1/24
**23 [1]** 45/19
**230 [1]** 2/9
**234 [1]** 2/9
**24 [2]** 45/19 48/14
**255 [1]** 1/22
**26 [1]** 1/17 3/1
**28 [1]** 43/2 54/8
**2:00 [1]** 53/19

**3**

**312 [1]** 2/5

**4**

**400 [1]** 22/8
**404 [1]** 48/22

**408 [1]** 37/7
**43 [1]** 51/16
**44 [1]** 51/16
**46 [1]** 33/7

**5**

**500 [1]** 51/6
**52 [1]** 32/12
**53 [1]** 32/12

**6**

**622 [1]** 37/8
**626-844-7660 [1]** 2/10
**631 [1]** 37/24
**68 [1]** 35/7
**69 [1]** 35/10

**7**

**70 [1]** 21/5
**73 [1]** 36/20
**74 [1]** 36/21
**753 [1]** 54/8
**7660 [1]** 2/10

**8**

**84 [1]** 41/5
**85 [1]** 41/6
**8:00 [1]** 53/19
**8:15 [1]** 53/12

**9**

**90012 [2]** 1/23 2/6
**902.11 [1]** 11/18
**911 [6]** 11/24 12/1 12/2 12/25 14/10
49/11
**91101 [1]** 2/10
**95 [2]** 1/8 3/4
**9:00 [1]** 11/9
**9:32 [2]** 1/17 3/1

**A**

**a.m [3]** 1/17 3/1 54/1
**able [9]** 3/16 19/12 20/11 22/10 23/20
24/4 26/15 41/4 52/19
**abnormal [1]** 18/20
**about [48]** 4/17 8/7 9/5 10/12 12/1
12/6 12/9 12/18 13/7 15/2 15/10 15/13
15/13 16/4 16/9 19/17 20/14 22/1
23/21 24/1 24/7 24/10 24/16 25/7 27/6
27/6 28/2 28/19 29/9 29/20 34/23
37/25 38/11 38/17 38/24 39/11 39/15
39/21 45/20 46/15 47/1 47/10 49/3
51/2 52/18 52/22 53/12 53/13
**above [1]** 54/11
**above-entitled [1]** 54/11
**absence [1]** 20/10
**absolute [1]** 19/19
**academic [2]** 17/5 17/11
**accept [6]** 30/6 30/7 31/18 32/14 32/19
35/9
**accepts [1]** 41/12
**accounted [1]** 37/21
**accurate [1]** 38/20
**acoustics [1]** 52/10
**act [2]** 18/2 45/21
**acts [1]** 50/3
**actual [6]** 13/21 16/5 22/23 34/13
34/19 49/18

**actually [7]** 7/5 12/17 18/6 28/2 40/15
41/18 50/3
**add [7]** 35/10 35/13 36/25 38/6 38/8
39/21 44/21
**added [1]** 10/15 25/5 39/6
**addition [1]** 21/2
**additional [3]** 5/16 37/6 47/19
**additions [1]** 41/25
**adequate [1]** 10/3
**admissible [3]** 16/14 18/13 26/13
**admit [1]** 18/10
**admonished [1]** 50/2
**advance [1]** 18/24
**advanced [1]** 15/23
**advise [1]** 15/14
**after [10]** 5/21 7/11 8/7 8/8 8/12 10/13
16/11 26/16 40/25 53/19
**again [8]** 6/17 9/17 24/24 40/18 41/11
43/18 53/1 53/14
**against [1]** 45/6
**ago [3]** 17/17 21/3 49/14
**agree [2]** 27/24 34/5
**agreeable [2]** 28/12 44/11
**agreed [3]** 6/9 13/4 24/9
**agreed-upon [1]** 13/4
**agreeing [1]** 9/23
**agreement [3]** 6/2 6/5 48/12
**agrees [1]** 31/21
**ahead [6]** 26/23 28/5 29/8 35/2 35/5
51/18
**Alfredo [3]** 10/16 10/18 10/20
**Alfredo Morales [2]** 10/16 10/18
**all [59]**
**alleged [1]** 7/20
**allow [4]** 7/12 22/25 23/17 38/25
**alone [2]** 16/13 23/9
**along [2]** 3/8 22/4
**already [5]** 37/21 44/24 44/25 44/25
46/14
**also [15]** 7/8 9/15 11/23 12/6 15/1 18/5
28/16 31/11 34/15 38/19 40/24 40/25
45/15 45/17 48/11
**alternate [1]** 29/7
**alternative [3]** 18/18 33/22 45/16
**alternatively [1]** 15/14
**alternatives [1]** 46/16
**although [2]** 15/24 23/2
**Alvarez [1]** 49/10
**am [4]** 5/25 7/15 15/5 16/1
**ambiguity [1]** 44/5
**ambiguous [1]** 43/21
**Amendment [5]** 6/24 31/3 31/6 31/12
39/11
**AMERICA [2]** 1/6 3/5
**and/or [2]** 30/12 31/5
**Angeles [4]** 1/15 1/23 2/6 3/1
**another [1]** 20/15
**answer [3]** 50/4 50/5 50/22
**anticipating [1]** 20/8
**antisocial [3]** 19/25 20/7 20/20
**any [26]** 3/19 5/16 6/14 6/16 8/6 9/10
11/8 12/17 12/17 18/22 24/10 27/19
29/12 30/1 31/12 34/16 35/22 36/16
40/24 44/21 45/10 45/12 46/15 49/20
52/16 52/18
**anybody [1]** 10/19
**anything [12]** 9/19 12/8 15/7 16/5
44/21 44/25 46/23 47/5 47/17 48/5

**A**

anything... [2] 50/6 53/7
anywhere [1] 52/13
apologize [1] 47/18
apparently [1] 49/6
APPEAL [1] 1/14
appear [2] 37/10 48/12
APPEARANCES [1] 2/1
appears [2] 23/19 53/18
applied [1] 43/24
applies [2] 7/5 43/22
appointed [1] 17/17
appropriate [2] 23/13 24/25
appropriately [2] 18/24 52/8
approved [2] 45/21 46/10
are [43] 4/12 4/18 6/23 7/21 10/24
11/22 11/23 12/19 13/11 13/12 15/4
12/12 18/7 19/6 19/11 21/13 23/22
24/8 26/6 27/15 27/16 32/15 33/1 33/9
33/18 34/12 34/18 36/23 39/18 39/20
42/18 43/4 45/9 46/16 48/4 48/19 49/3
49/5 49/21 51/11 52/10 52/18 53/3
area [4] 19/8 43/15 44/10 51/16
aren't [1] 28/7
argue [2] 4/15 19/9
arguing [1] 40/20
argument [6] 21/17 25/21 36/21 39/25
40/8 41/12
arguments [1] 45/10
around [1] 18/2
as [54] 7/17 9/6 12/22 14/14 15/17
16/23 17/16 18/13 18/18 19/12 19/18
19/18 21/19 22/3 22/19 22/19 23/6
23/13 24/9 24/24 25/4 25/13 26/8
27/12 30/2 30/18 30/19 31/1 31/3
31/22 34/7 35/7 36/19 37/2 37/17
39/17 40/6 40/8 41/3 41/3 42/6 42/14
43/21 43/22 44/4 46/10 47/21 48/13
48/13 48/22 50/15 52/3 52/3 53/2
ask [10] 3/17 5/23 9/2 12/8 12/16
35/13 38/6 50/4 50/5 50/23
asked [2] 3/15 21/24
asking [3] 19/6 19/11 35/18
aspect [1] 37/14
aspects [1] 25/5
assault [2] 16/6 40/13
assert [1] 45/8
assign [1] 42/20
ASSISTANT [1] 2/4
assume [8] 10/18 13/20 14/23 15/6
16/14 23/7 23/24 53/6
assuming [1] 13/9
at [35] 2/8 3/8 11/7 12/22 13/19 15/13
15/20 17/16 18/10 22/12 22/23 23/13
23/24 24/8 25/1 25/3 26/7 26/14 27/8
28/22 28/25 32/25 36/13 36/16 37/7
37/24 38/17 39/1 41/1 44/19 48/5 51/6
52/7 52/18 54/1
ATTORNEY [1] 2/2
attorneys [5] 2/4 2/8 42/14 50/4 50/5
audience [1] 50/9
authenticate [1] 12/21
authenticity [1] 12/23
authority [3] 45/13 45/15 45/16
available [1] 4/8
aware [2] 15/4 49/23
away [1] 50/1

**B**

back [8] 10/6 25/2 32/24 33/2 34/1
52/22 53/3 53/12
back not [1] 33/2
background [6] 16/14 21/23 24/25
36/3 36/10 50/7
Bagdasarian [1] 31/4
based [2] 16/10 20/18
basically [3] 7/12 16/12 33/6
basis [2] 30/24 39/11
Bates [2] 14/3 51/22
be [97]
because [35] 6/8 6/12 6/23 6/24 6/25
13/16 16/6 17/10 17/18 23/8 27/4
27/11 27/24 28/3 30/17 31/5 31/25
32/7 32/18 32/20 33/6 34/16 35/23
37/10 38/12 42/19 43/2 44/4 44/16
46/4 48/9 49/13 49/25 51/7 51/14
BEDNARSKI [21] 2/7 2/7 3/11 4/11
5/23 10/6 11/6 13/11 13/19 14/20 15/4
16/24 18/11 21/15 21/20 22/15 23/7
23/22 26/8 30/23 47/8
Bednarski's [1] 25/20
been [16] 5/4 5/13 5/13 5/17 6/9 6/22
11/2 27/7 28/3 37/21 37/25 43/22
44/14 45/21 46/10 50/11
before [16] 5/21 8/7 10/11 11/11 12/8
14/14 16/23 17/17 21/25 24/11 44/15
46/15 46/24 52/24 52/25 53/24
beginning [2] 32/25 44/23
behavior [1] 47/1
behaviors [2] 20/16 20/19
being [5] 6/15 7/3 19/12 46/17 49/25
believe [6] 11/2 12/1 17/2 40/25 42/12
50/21
believe that [1] 11/2
believes [1] 37/5
besides [1] 50/6
best [5] 15/22 21/4 45/1 51/1 51/3
better [7] 8/12 10/11 10/11 11/4 22/1
26/4 45/9
between [2] 4/3 36/24
beyond [1] 15/21
bias [1] 50/18
big [1] 44/13
binders [1] 51/17
bit [3] 14/16 19/23 31/19
Black [1] 31/4
blurt [2] 49/4 49/12
book [1] 44/13
books [1] 51/25
bore [1] 22/16
both [8] 7/15 28/14 29/25 30/20 34/8
43/11 47/23 47/24
bother [1] 24/12
bottom [1] 25/15
Boulevard [1] 2/9
brain [3] 17/10 20/17 20/19
break [3] 31/24 50/24 53/24
breakfast [1] 5/5
breaks [1] 32/19
brief [2] 14/15 14/18
briefing [1] 15/19
briefly [1] 21/5
bring [3] 11/20 48/6 49/13
Briot [4] 10/21 10/22 10/23 14/18
broken [2] 31/19 37/15

Buddig's [1] 22/14
Building [1] 1/9
business [1] 12/12
but [81]

**C**

C.E [8] 7/18 7/25 9/5 9/10 35/11 35/16
35/20 41/1
CA [1] 1/23
CAITLIN [2] 2/8 3/11
Caitlin Weisberg [1] 3/11
CALIFORNIA [6] 1/2 1/15 2/6 2/10 3/1
8/1
call [12] 7/25 9/10 9/18 11/24 12/1
12/2 12/25 14/9 14/10 27/23 31/14
48/12
called [3] 10/17 10/25 50/13
calling [3] 3/4 9/16 49/11
calls [4] 12/7 13/7 13/13 14/12
came [1] 5/11
camera [2] 14/19 15/14
can [22] 9/22 10/12 15/22 17/6 18/3
21/14 22/12 22/20 24/13 25/8 25/22
30/20 34/8 39/19 41/14 47/2 48/14
50/22 51/4 52/3 52/23 53/13
can't [15] 4/24 6/4 16/6 18/23 24/1
24/3 24/24 25/16 25/19 25/24 27/14
27/19 32/7 32/10 51/3
cannot [2] 21/8 39/19
capacity [2] 41/21 42/6
care [2] 9/21 27/20
careful [1] 52/12
carefully [1] 25/3
case [28] 4/24 5/22 6/3 7/10 7/11 7/12
10/12 15/16 17/18 18/14 21/19 23/18
24/8 31/14 37/23 38/13 39/25 40/2
40/24 41/1 42/2 42/17 45/25 46/4
48/10 48/16 49/1 53/2
case-in-chief [2] 7/12 49/1
cases [7] 18/11 25/22 31/3 34/12
34/18 36/12 46/12
Cassel [4] 37/7 37/22 38/6 39/6
CASSIE [2] 2/3 3/7
Cassie Palmer [1] 3/7
category [2] 14/2 27/20
cause [2] 34/6 51/2
caused [1] 25/5
causing [1] 20/19
CENTRAL [2] 1/2 8/1
certain [1] 6/25
certainly [12] 6/8 7/16 18/8 19/9 21/14
22/5 23/25 25/19 26/3 26/16 43/10
50/15
CERTIFICATE [1] 54/5
certify [1] 54/7
cetera [1] 18/17
Chad [2] 9/16 9/18
Chad Ellsworth [2] 9/16 9/18
chance [4] 13/18 23/23 28/22 28/24
change [2] 6/13 42/3
changed [3] 37/3 40/19 41/9
charge [3] 15/18 16/6 45/6
charging [2] 15/3 15/11
chief [2] 7/12 49/1
children [1] 9/8
choice [3] 5/22 17/15 23/9
choosing [1] 51/9
chose [1] 17/9

**C**

Chris [1]  3/7
Chris Kendall [1]  3/7
CHRISTOPHER [1]  2/3
Circuit [16]  37/8 41/13 41/25 42/4
  42/12 42/21 42/22 43/1 43/6 43/19
  44/19 45/12 45/14 45/16 45/21 46/10
Circuit's [2]  40/12 43/4
circumstantial [1]  39/15
cited [1]  18/11
cites [1]  37/7
citing [1]  46/11
claiming [3]  20/2 25/9 25/10
clarify [5]  8/11 20/22 21/8 24/6 28/1
class [2]  36/11 43/24
clear [8]  8/16 12/20 25/8 29/4 29/25
  36/11 37/22 43/19
clearer [1]  45/9
clearly [2]  23/16 31/8
clerks [1]  23/24
close [2]  19/23 25/21
closely [1]  25/1
closing [1]  25/21
clothes [1]  48/4
CM [1]  1/21
Code [1]  54/8
colleagues [1]  40/11
Colorado [1]  2/9
combine [2]  32/22 35/14
come [10]  6/2 6/4 7/21 12/22 26/5 26/6
  34/1 36/12 40/16 53/11
comes [3]  12/8 31/2 44/6
comfortable [1]  9/15
coming [5]  23/14 26/17 49/6 49/21
  50/9
comma [1]  40/25
comments [4]  8/5 28/11 29/13 52/18
committed [1]  7/11
committee [1]  43/7 43/8
communicating [2]  19/4 24/7
communications [1]  52/16
complete [1]  26/23
completely [2]  37/5 47/19
concept [1]  6/23
concern [4]  27/5 27/6 43/10 43/18
concerned [2]  28/2 51/2
concerning [1]  29/10
concerns [2]  28/11 47/1
concluded [1]  54/1
conclusions [1]  46/1
condition [1]  42/5
conduct [5]  18/19 39/2 48/22 52/7
  52/7
conducted [1]  52/8
Conference [2]  1/19 54/13
confirm [1]  11/19
conformance [1]  54/12
confused [3]  32/25 38/13 38/15
confusing [4]  31/19 37/20 41/16 46/17
confusion [1]  34/6
consider [1]  43/11
consistently [1]  27/21
constant [1]  28/20
constitutional [2]  23/8 39/21
context [5]  18/17 39/24 41/23 42/1
  45/22
continue [1]  15/21

contributed [1]  25/5
control [1]  18/18
controlling [1]  18/2
correct [7]  8/21 12/2 12/3 14/25 44/17
  44/18 54/9
correctly [1]  21/5
correlate [1]  51/23
could [10]  6/2 6/9 24/11 25/24 31/13
  32/6 35/24 42/3 48/17 51/24
couldn't [3]  24/17 25/4 40/16
counsel [2]  3/8 4/25
count [1]  47/21
course [5]  12/7 16/13 23/4 34/16 43/3
court [33]  1/1 4/16 6/19 8/9 10/9 12/9
  17/2 17/3 23/6 28/13 29/18 30/5 31/17
  32/13 32/19 34/20 35/7 35/8 35/13
  35/18 36/21 37/4 38/2 38/8 40/6 41/3
  41/12 45/3 47/10 48/21 49/14 51/9
  53/24
Court's [3]  37/24 47/20 53/20
Courthouse [1]  2/5
courtroom [4]  5/12 17/12 52/10 52/23
CR [2]  1/8 3/4
CR 15-95 [1]  3/4
creating [1]  52/1
credible [1]  24/1
crime [1]  6/21
criminal [6]  6/19 6/20 6/23 7/9 18/14
  30/25
critical [1]  18/1
cross [3]  5/2 20/8 23/18
cross-examination [3]  5/2 20/8 23/18
CRR [1]  1/21
CRR-CM [1]  1/21
crunch [1]  29/7
CSR [3]  1/21 54/7 54/21
CUNEO [4]  1/21 54/7 54/20 54/21
custodians [1]  11/21
custody [1]  5/13

**D**

DALE [1]  1/4
Date [1]  54/15
day [6]  4/23 4/23 5/14 6/5 50/6 53/19
days [1]  5/2
deal [2]  7/3 17/11
dealing [1]  50/14
dealt [1]  24/18
decide [1]  31/15
decided [2]  4/13 30/25
decision [1]  23/13
decisions [2]  15/3 15/11
DECKER [1]  2/2
defendant [14]  1/10 2/7 7/12 12/14
  12/19 13/9 16/13 24/10 25/9 35/16
  35/19 39/20 45/7 46/2
defendant's [6]  24/20 30/13 38/11
  38/14 45/5 47/1
defendants [2]  52/23 53/2
defender [1]  17/9
defense [22]  7/10 8/23 11/3 15/13
  24/9 29/23 30/6 31/23 32/18 33/7
  34/15 35/9 36/20 36/25 37/7 40/7
  40/20 41/5 41/8 41/24 45/24 48/10
defense's [1]  41/20
defined [1]  41/21
defines [1]  30/8
definition [1]  40/13

denies [2]  7/8 7/13
depending [1]  48/24
deputies [1]  9/7
described [1]  24/25
description [2]  46/6 46/7
descriptions [1]  39/19
descriptives [1]  39/20
desire [1]  5/10
determination [1]  35/21
determine [2]  25/4 41/4
dictate [1]  36/17
did [23]  4/1 6/1 6/16 10/2 10/6 11/9
  16/17 22/8 24/20 25/2 25/3 25/25
  28/10 34/3 36/4 36/8 36/12 37/8 37/9
  37/10 43/1 43/9 45/12
didn't [6]  32/9 34/22 35/23 36/16
  43/19 44/2
difference [3]  22/7 36/23 38/9
differences [1]  36/24
different [6]  8/10 18/12 32/21 42/16
  44/7 46/4
differently [1]  34/17
difficult [2]  17/11 52/9
difficulty [1]  18/2
diminished [3]  18/5 41/21 42/6
dire [9]  4/19 5/21 8/7 8/12 8/17 10/14
  28/10 28/12 47/20
direct [3]  20/23 38/11 38/18
directed [1]  27/13 43/20
directs [1]  5/6
disagree [3]  30/22 34/6 40/3
discovery [2]  13/22 14/1
discuss [3]  23/12 46/24 53/7
discussion [4]  15/2 17/16 37/24 44/21
disorder [5]  20/1 20/7 20/18 20/19
  25/10
display [2]  40/9 40/14
disposition [1]  20/20
disputed [2]  6/16 29/10
distill [1]  17/24
DISTRICT [4]  1/1 1/2 8/1 8/1
DIVISION [1]  1/3
do [43]  5/23 5/23 6/1 7/20 8/6 8/20
  10/2 10/8 10/12 13/11 14/6 14/15
  14/20 14/21 15/22 15/24 16/5 18/3
  21/4 23/23 25/19 25/22 26/15 30/22
  31/15 32/3 32/17 39/8 39/19 40/15
  44/22 45/1 46/13 47/12 47/14 47/18
  48/5 49/17 49/20 51/1 51/3 52/24 53/1
docket [1]  11/13
document [2]  32/3 51/22
does [8]  19/5 19/19 20/2 20/3 35/15
  36/2 42/13 50/18
doesn't [14]  9/10 16/5 18/1 19/22
  19/25 23/2 24/5 27/14 27/23 35/22
  37/17 47/21 51/2 53/13
doing [5]  5/4 8/25 15/7 39/2 42/24
don't [64]
done [4]  10/8 14/5 31/23 52/25
door [2]  50/16 50/19
doubt [5]  34/8 45/7 45/13 45/18 45/23
DOUGLAS [2]  1/9 3/5
down [3]  8/19 24/12 26/15
Dr. [34]  4/14 4/14 16/25 18/12 20/6
  20/11 20/12 20/13 20/16 21/1 21/25
  22/2 22/14 23/15 23/19 23/25 23/25
  24/7 24/9 25/2 25/10 25/15 25/17 26/2
  26/14 26/16 26/21 27/5 27/6 27/10

**D**

Dr.... [4] 27/22 28/2 42/23 43/10
Dr. Buddig's [1] 22/14
Dr. Faerstein [8] 4/14 20/6 20/11 20/12 20/16 23/19 23/25 25/15
Dr. Faerstein's [4] 18/12 26/2 26/14 28/2
Dr. Victoroff [20] 4/14 16/25 20/13 21/1 21/25 22/2 23/15 23/25 24/7 24/9 25/2 25/10 25/17 26/16 26/21 27/6 27/10 27/22 42/23 43/10
Dr. Victoroff's [1] 27/5
drafting [1] 34/11
dressed [1] 48/6
drone [1] 22/2
DSF [1] 1/8
dumped [1] 4/3
during [6] 9/9 9/10 16/2 43/23 47/1 51/19
duties [2] 36/1 36/6

**E**

e-mail [2] 29/10 46/11
each [4] 8/20 14/16 22/6 22/14
East [1] 1/22
easy [2] 38/12 38/15
effective [1] 22/11
EILEEN [1] 2/2
either [6] 5/21 5/25 10/8 12/5 32/22 45/25
elaborating [2] 33/15 33/19
element [13] 30/13 30/16 31/24 32/1 32/20 32/23 33/3 33/6 37/13 37/13 37/16 37/18 46/14
element but [1] 33/3
elements [12] 19/24 30/4 31/19 31/20 31/21 32/2 32/20 32/21 32/24 33/5 33/9 46/18
eliciting [1] 20/23
Ellsworth [5] 9/7 9/15 9/16 9/16 9/18
Elonis [5] 29/24 30/24 31/8 31/11 40/23
else [11] 6/16 9/19 12/13 20/9 31/16 35/5 35/5 40/5 47/5 47/17 53/7
elsewhere [1] 37/10
emphasis [1] 39/23
end [2] 24/8 38/17
ended [1] 7/2
enforcement [11] 7/18 16/7 28/21 35/12 35/17 35/20 35/24 36/4 36/5 36/17 48/19
engaged [1] 35/25
enough [3] 5/22 31/9 51/1
ensure [1] 11/20
entire [1] 37/12
entitled [1] 54/11
equally [1] 15/17
especially [3] 21/19 49/10 52/13
essential [1] 40/1
essentially [2] 31/23 40/20
et [1] 18/17
et cetera [1] 18/17
even [11] 4/24 5/9 9/19 15/21 16/7 17/19 22/7 25/8 26/13 40/22 43/25
event [2] 6/14 6/16
ever [2] 17/3 26/2
every [5] 8/2 21/18 22/6 22/14 37/18

everybody [1] 49/18
everything [1] 48/25
evidence [8] 18/4 20/3 39/15 39/19 45/7 45/25 46/5 52/19
evidentiary [1] 27/16
exactly [1] 36/8
examination [4] 5/2 20/8 23/18 51/19
example [3] 22/13 44/3 50/17
Excellent [3] 13/6 15/9 28/18
exception [1] 52/9
exclude [1] 25/16
exhibit [5] 51/6 51/15 51/20 51/22 51/25
exhibits [6] 4/20 11/7 11/8 13/19 13/21 51/16
experience [3] 17/10 20/18 21/15
expert [6] 16/23 18/14 19/12 26/4 27/13 42/13 42/15 44/4
expertise [2] 26/9 26/10
experts [5] 5/12 15/20 21/13 25/22 27/1 42/19 43/23 48/24
explain [4] 16/15 20/17 43/14 50/21
explains [1] 42/23
explanation [1] 20/16
extent [6] 7/7 21/12 37/4 38/8 45/3 48/11

**F**

F.3d [1] 37/7
fact [1] 38/17
facts [9] 16/21 20/25 21/9 21/23 22/6 23/17 24/7 27/17 27/18
Faerstein [10] 4/14 20/6 20/11 20/12 20/16 23/19 23/25 25/15 27/17 42/24
Faerstein's [4] 18/12 26/2 26/14 28/2
family [2] 24/23 24/25
far [3] 11/19 41/3 50/1
fault [1] 6/11
feasibly [1] 52/3
federal [7] 1/22 16/7 17/3 35/17 35/20 35/23 38/10
feeling [1] 8/9
feelings [1] 8/6
few [2] 48/1 53/12
field [1] 21/14
fifteen [1] 53/24
fifteen-minute [1] 53/24
fifth [2] 30/13 37/16
figure [3] 17/21 40/11 51/19
file [2] 6/1 11/9
filed [1] 32/4
filing [1] 15/14
final [3] 39/15 51/5 52/6
find [3] 38/25 45/12 46/2
findings [1] 10/2
fine [6] 3/21 5/25 7/20 7/22 10/9 51/7
fires [1] 53/25
first [18] 6/23 22/6 23/4 30/4 31/2 31/5 31/12 31/20 32/1 32/1 33/2 33/2 33/6 35/14 36/24 39/11 42/25 53/19
FISCHER [1] 1/4
five [1] 32/20
focus [1] 24/13
followed [1] 8/17
following [1] 22/8
force [2] 40/9 40/14
foregoing [1] 54/9
forensic [1] 27/12

forensics [1] 17/13
Forest [1] 4/6
forget [1] 14/2
form [8] 8/5 25/21 25/25 25/25 26/6 28/19 29/3 29/8
format [1] 54/11
forward [3] 5/14 16/16 22/9
found [1] 45/16
foundational [1] 14/9
FPD [2] 15/1 15/10
Friday [2] 4/3 52/2
full [2] 21/16 26/23
fun [1] 53/3
functions [1] 42/19
further [1] 47/6

**G**

gatekeeping [1] 42/18
gave [1] 12/6
general [5] 19/18 29/23 30/2 30/5 49/7
generally [3] 9/20 20/20 22/20
generate [1] 19/20
generates [1] 19/16
get [15] 13/18 21/18 22/19 27/23 38/13 38/13 38/15 49/9 49/10 50/12 51/16 51/18 52/3 53/6 53/13
getting [3] 19/23 21/2 21/3
give [7] 10/11 10/13 26/21 48/12 48/13 48/14 49/17
given [7] 7/9 11/18 12/13 13/20 20/25 22/3 50/23
giving [1] 39/24
gleaned [1] 27/11
gmail.com [1] 1/24
go [11] 19/5 21/4 22/5 25/2 29/8 29/18 35/2 35/5 46/15 50/2 50/6
going [51] 5/12 5/22 7/16 7/16 7/21 7/24 8/18 8/20 9/18 10/24 15/12 15/21 16/21 17/17 18/25 20/3 20/11 20/12 21/2 21/3 21/18 21/22 22/5 22/8 22/16 22/20 22/21 23/1 23/14 26/5 26/6 26/12 27/9 27/10 27/17 27/21 27/24 28/3 28/6 31/15 33/17 34/14 37/15 45/3 46/6 46/7 49/3 49/5 49/21 51/25 52/14
good [8] 3/6 3/9 3/10 3/13 10/20 20/1 21/19 27/15
got [1] 52/13
gotten [3] 12/12 48/23 51/8
government [44] 4/6 4/22 6/11 11/1 11/9 13/20 14/8 14/17 15/13 19/21 21/6 21/8 24/16 26/23 27/1 27/23 28/16 29/12 31/21 33/10 34/13 34/18 35/10 35/11 35/13 35/15 35/18 37/2 37/5 37/16 37/17 38/10 38/16 40/8 40/10 41/7 41/13 46/24 46/25 47/6 51/7 51/24 52/16 53/9
government's [16] 4/5 7/4 7/11 30/7 31/18 32/12 35/15 36/20 39/15 39/24 39/25 41/5 45/3 49/1 50/17 51/15
grasping [1] 18/13
Great [1] 48/8
greater [1] 42/20
grounds [1] 31/1
guess [8] 16/2 16/9 18/18 25/15 31/13 32/1 36/15 45/2
guilt [1] 46/1
guilty [2] 7/9 46/2

**G**

**gun [2]** 16/4 16/7
**guys [1]** 6/4

**H**

**had [27]** 5/9 9/10 10/2 11/6 11/18
14/18 15/19 17/10 17/16 20/6 21/25
22/2 22/3 23/23 27/5 27/6 27/7 27/8
27/11 28/22 28/24 38/3 38/3 39/1 41/7
47/10 48/11
**hadn't [2]** 19/17 33/11
**hamstrung [1]** 24/4
**handled [1]** 6/8
**hands [1]** 3/18
**happen [1]** 21/18
**happened [3]** 6/21 16/11 46/6
**happens [2]** 44/1 52/24
**happy [1]** 34/24
**hard [2]** 25/4 26/14
**harmless [1]** 15/17
**has [24]** 8/9 11/2 16/13 16/15 16/23
18/2 18/5 23/3 24/9 28/16 29/4 31/23
37/19 39/3 40/18 40/24 41/7 42/14
44/13 45/21 46/10 46/25 50/13 52/8
**have [97]**
**haven't [3]** 22/23 23/23 28/3
**having [3]** 5/9 48/20 49/24
**he [65]**
**he'd [1]** 3/17
**he's [19]** 5/13 5/13 7/9 7/20 17/3 17/5
17/24 19/3 19/3 19/4 19/16 19/17 22/5
27/12 27/21 27/22 27/24 28/3 28/6
**head [1]** 38/14
**heads [2]** 22/17 48/7
**health [2]** 16/13 42/4
**hear [16]** 9/19 10/17 10/18 10/24 16/2
25/16 26/16 29/12 29/20 36/21 40/8
42/15 43/17 52/15 52/16 52/19
**heard [3]** 26/2 44/24 50/6
**hears [1]** 26/3
**held [1]** 54/10
**help [5]** 9/24 17/21 26/12 49/25 51/3
**helpful [8]** 14/1 14/4 31/13 38/19
43/14 45/22 51/16 51/21
**helps [1]** 24/6
**her [5]** 8/15 21/15 49/10 51/1 52/17
**here [11]** 3/11 5/17 5/20 21/23 24/1
36/14 37/12 41/10 43/18 48/20 53/13
**hereby [1]** 54/7
**hesitate [1]** 45/20
**him [23]** 5/11 7/17 7/25 9/6 9/10 9/16
9/18 17/10 17/21 18/7 19/20 22/3
22/22 23/5 23/12 23/17 24/4 26/2
27/13 27/24 35/25 36/5 48/6
**himself [3]** 18/2 23/18 52/8
**his [20]** 3/17 3/18 5/10 7/19 10/24
20/16 20/18 20/20 21/14 22/9 23/9
23/9 23/20 23/20 26/22 26/24 28/4
28/7 36/1 36/6
**honestly [1]** 27/10
**Honor [62]**
**HONORABLE [1]** 1/4
**hope [1]** 18/14
**hours [1]** 48/14
**how [17]** 4/24 7/2 16/1 17/18 17/21
18/1 18/7 18/19 18/21 20/11 22/3 24/1
25/7 26/1 35/24 36/18 40/15

**I**

**I'll [9]** 5/23 7/15 25/1 25/2 36/13 41/17
43/17 44/19 45/1
**I'm [37]** 4/4 5/9 5/14 7/16 14/14 15/21
15/23 16/9 16/17 16/20 17/17 17/21
17/25 18/10 18/20 18/21 20/10 21/11
21/14 21/22 21/22 23/12 23/21 23/21
23/21 24/19 34/24 40/21 43/16 50/25 52/20
53/12
**I've [9]** 5/4 5/11 9/22 10/8 17/19 17/19
26/2 44/14 44/24
**idea [4]** 10/11 22/1 27/15 49/20
**identified [1]** 13/13
**if [46]** 3/16 6/1 6/11 6/21 7/19 8/9 9/20
9/21 9/23 15/11 16/7 17/23 19/15
19/21 21/4 21/24 21/25 22/7 24/6
25/17 26/2 26/13 27/15 27/19 28/3
29/7 31/25 34/14 35/18 35/23 36/16
40/21 41/12 41/21 43/10 44/20 45/24
46/17 47/23 47/24 48/14 50/16 50/21
51/25 52/13 53/1
**impeachment [3]** 13/9 13/16 50/17
**impede [3]** 35/24 36/5 39/4
**impeding [1]** 38/24
**implies [1]** 23/2
**imply [1]** 50/9
**important [5]** 4/12 22/17 25/7 46/3
46/9
**improper [1]** 15/7
**impulsive [1]** 18/16
**incidences [1]** 49/3
**incident [1]** 24/10
**inclined [5]** 30/6 31/18 32/13 32/19
35/9
**include [1]** 7/7
**included [7]** 28/4 28/7 33/11 34/16
34/21 38/4 40/22
**including [2]** 5/2 38/23
**incorrectly [1]** 17/25
**indeed [4]** 14/19 17/14 25/24 52/6
**indicate [3]** 32/23 34/12 34/18
**indicated [4]** 14/14 32/13 40/7 41/3
**indication [1]** 12/16
**Indictment [2]** 14/15 15/16
**inflexible [1]** 18/23
**information [1]** 50/13
**initial [5]** 15/24 29/11 29/13 29/21
47/16
**initials [2]** 7/19 9/5
**injury [1]** 17/10
**innocence [1]** 46/1
**inquire [1]** 51/24
**inquiry [1]** 35/21
**inside [1]** 38/13
**insight [1]** 18/7
**instead [1]** 29/24
**instruction [55]**
**instructions [21]** 4/20 6/10 22/3 29/9
29/11 29/23 36/24 37/11 38/11 39/17
39/18 41/8 43/5 44/11 44/14 45/9
46/14 47/11 47/13 47/16 50/23
**insufficient [1]** 37/9
**intend [2]** 4/1 12/10
**intended [4]** 30/17 35/24 41/11 41/11
**intending [2]** 19/18 47/11
**intent [13]** 7/1 25/25 25/25 30/1 30/2

30/21 31/2 31/9 38/12 39/1 40/21
40/22 40/25
**intention [1]** 53/20
**intentional [11]** 7/6 30/1 36/25 37/3
37/14 37/18 37/19 38/7 38/9 39/8
39/12
**intentionally [2]** 42/22 43/1
**interested [1]** 53/2
**interfere [3]** 35/25 39/1 39/4
**interfering [1]** 38/24
**interpretation [2]** 31/1 46/7
**interpretations [1]** 46/5
**interpreting [1]** 17/25
**intimidate [1]** 35/25
**intimidating [1]** 38/24
**introduce [1]** 8/2
**introduction [1]** 29/3
**investigate [1]** 36/7
**investigation [1]** 39/5
**involved [1]** 15/2
**irrelevant [1]** 35/21
**is [133]**
**is Mr [1]** 10/21
**isn't [3]** 38/18 41/21 46/6
**issue [1]** 11/17 15/12 16/4 18/12
24/19 25/10 34/10 40/1 41/7 51/5 52/6
**issues [6]** 4/12 16/13 27/15 27/16
31/12 48/22
**it [118]**
**it's [49]** 6/15 6/15 8/9 9/21 10/1 11/13
13/16 13/22 14/19 17/11 18/1 19/8
20/18 21/8 21/9 21/18 22/8 23/8 23/15
25/7 25/8 26/13 29/6 29/25 30/9 31/3
31/11 31/19 32/19 37/15 37/19 37/21
38/2 38/12 38/15 43/13 44/7 44/8 44/8
44/13 44/17 45/22 49/9 49/14 51/21
52/9 52/14 53/1 53/3
**Items [1]** 16/12
**its [1]** 14/17
**itself [2]** 42/18 44/6

**J**

**jail [2]** 12/6 14/12
**JENNIFER [2]** 2/4 3/8
**job [1]** 10/3
**judge [5]** 1/4 8/1 22/1 22/2 22/3
**judges [1]** 43/6
**Judicial [1]** 54/12
**jurisprudence [2]** 33/10 33/14
**juror [1]** 41/22
**jurors [2]** 42/14 42/19
**jury [29]** 4/19 6/10 10/11 14/15 15/2
15/18 18/3 18/18 18/19 22/7 22/16
23/3 26/13 28/10 29/9 32/25 33/18
37/8 38/10 38/13 38/19 38/25 43/5
43/16 47/11 47/21 47/24 52/15 53/13
**jury's [1]** 45/23
**just [40]** 3/15 4/17 4/23 5/11 6/11 6/15
7/25 8/16 9/18 11/19 12/8 12/16 12/20
20/22 21/5 21/17 21/21 22/2 23/15
24/5 24/13 24/24 27/8 27/24 28/1
31/14 32/18 33/2 34/1 34/5 37/19 41/1
49/13 51/3 51/8 51/9 51/24 53/4 53/11
53/16

**K**

**KAYE [1]** 2/7
**KENDALL [3]** 2/3 3/7 8/24

**K**

kind [5] 15/4 19/23 24/17 33/11 35/14
kinds [1] 21/13
kmbllaw.com [1] 2/11
knew [8] 21/15 21/25 27/8 35/16 35/19 36/6 41/11 41/12
know [59]
knowing [8] 7/6 30/2 30/19 37/3 37/14 38/9 39/9 40/22
knowledge [3] 30/2 30/21 31/9
knowledgeable [1] 44/9
knows [1] 26/4

**L**

lacking [1] 18/16
lacks [1] 18/7
laid [1] 38/3
language [20] 6/13 35/10 37/4 37/7 37/20 38/17 38/24 39/6 40/9 40/12 40/12 40/18 40/24 42/3 44/6 45/17 45/19 46/3 46/9 46/10
last [10] 5/17 5/20 6/1 11/10 15/20 15/22 19/25 29/10 35/19 45/24
lastly [1] 51/14
later [1] 18/18 53/14
LATKA [21] 1/9 3/5 3/12 3/15 5/10 7/8 13/1 17/24 18/1 22/21 22/22 23/3 23/4 24/1 24/8 25/17 25/24 48/22 52/7 52/8 52/11
Latka's [2] 12/1 17/15
law [20] 8/2 17/7 16/7 28/20 30/25 35/11 35/17 35/20 35/23 36/4 36/5 36/17 38/20 38/20 41/15 42/17 44/18 44/18 45/9 48/19
lawyer [2] 50/25 52/12
lawyers [2] 4/18 21/19
least [4] 12/22 15/14 17/16 22/12
leave [1] 24/12
lectern [1] 29/16
left [1] 42/22
legal [1] 42/14
length [1] 4/22
lengthy [1] 15/24
less [1] 44/18
let [1] 22/2
let's [2] 12/20 29/9
letter [1] 15/24
like [15] 5/14 6/7 8/17 12/8 27/17 29/18 32/23 33/15 45/8 49/6 51/6 51/9 51/19 51/20 52/10
likely [1] 15/15
limiting [2] 24/17 24/18
line [2] 25/15 41/1
list [9] 10/15 11/7 12/12 13/19 22/13 24/8 48/2 51/15 51/15
listen [1] 21/23
listening [2] 12/17 53/4
listing [1] 25/20
lists [1] 11/18
litigator's [1] 21/17
LITT [1] 2/7
little [6] 14/16 19/23 25/7 31/19 43/21 53/14
long [2] 5/13 20/18
look [10] 6/17 11/7 13/19 23/24 25/1 26/14 28/22 28/24 36/13 44/19
looked [1] 22/23

looking [2] 5/14 18/10
Los [4] 1/15 1/23 2/6 3/7
lot [11] 14/2 15/23 17/20 27/7 39/20 42/17 46/4 46/8 48/15 49/5 51/21
Lots [2] 24/23 48/7
loud [2] 18/17 49/7
Lowe's [2] 11/24 12/21
lower [1] 41/1
lowering [1] 39/24
Luisa [1] 49/10
Luisa Alvarez [1] 49/10

**M**

made [5] 5/17 6/25 13/1 24/10 30/18
mail [2] 29/10 46/11
main [2] 36/23 36/23
major [1] 16/4
make [18] 9/10 9/20 10/2 12/20 17/22 22/7 23/13 29/13 30/18 31/14 35/22 42/1 43/19 45/20 49/2 49/16 51/8 52/18
makes [6] 18/8 18/17 29/25 36/11 37/22 43/1
making [5] 5/20 7/9 21/17 36/14 52/16
many [5] 15/16 15/19 15/20 26/8 42/18
MARILYN [2] 2/7 3/11
Marilyn Bednarski [1] 3/11
mark [1] 25/22
marshals [1] 48/6
matter [4] 19/18 30/3 37/2 54/11
matters [2] 4/19 6/8
may [20] 3/3 9/2 9/4 11/14 12/11 17/18 17/25 19/9 20/15 20/17 26/15 29/16 31/9 36/15 41/4 48/15 48/23 50/15 50/18 54/15
maybe [7] 6/10 18/8 24/11 26/9 49/10 50/20 51/24
mbednarski [1] 2/11
McLANE [1] 2/7
MDC [3] 13/7 13/12 48/5
me [19] 3/16 4/3 6/8 8/2 8/4 15/14 20/25 32/6 32/9 32/15 32/16 38/15 44/20 44/22 46/11 48/12 51/9 52/15 53/25
mean [15] 6/4 6/21 16/17 20/2 21/22 22/15 26/2 27/14 31/21 32/12 36/2 40/12 40/21 42/3 44/1
means [10] 18/6 33/21 36/25 37/4 37/6 37/9 38/6 38/25 42/15 46/7
meant [2] 5/5 41/10
mechanism [1] 50/14
medical [1] 27/21
memo [3] 34/11 34/20 35/3
memorandum [1] 52/22
mens [7] 7/5 7/7 31/1 33/12 37/10 38/4 41/9
mens rea [7] 7/5 7/7 31/1 33/12 37/10 38/4 41/9
mental [5] 16/13 19/5 19/13 19/23 42/4
mention [1] 8/4
mentioned [5] 5/20 10/17 10/18 20/6 50/16
microphone [1] 52/13
might [8] 14/8 15/11 16/19 18/18 18/19 22/1 22/24 36/17
mini [1] 5/23
mini-opening [1] 5/23

minute [5] 15/20 15/22 30/10 48/6 53/20
miss [1] 22/17
mistrial [1] 49/16
model [5] 41/14 41/20 43/19 44/7 44/11
modern [1] 38/10
molehill [1] 36/14
moment [1] 23/25
Monday [2] 1/17 3/1
months [3] 13/12 21/3 49/14
Morales [2] 10/16 10/18
more [19] 7/3 16/2 17/11 17/19 17/22 19/18 23/16 23/23 25/1 25/3 28/2 31/13 42/1 42/10 46/23 49/18 51/21 53/12 53/16
morning [6] 3/6 3/9 3/10 3/13 3/16 4/3
most [5] 9/6 18/8 27/20 49/24 53/2
motion [4] 15/2 25/16 27/7 49/16
motions [1] 4/15
mountain [1] 36/14
mouth [1] 7/21
mouthpiece [1] 22/21
move [3] 16/15 22/4 22/8
Mr [1] 10/21
Mr. [23] 3/12 3/15 5/10 7/8 8/24 10/22 12/1 13/1 17/15 17/24 18/1 22/21 22/22 23/3 23/4 24/1 24/8 25/17 25/24 48/22 52/7 52/8 52/11
Mr. Briot [1] 10/22
Mr. Kendall [1] 8/24
Mr. Latka [19] 3/12 3/15 5/10 7/8 13/1 17/24 18/1 22/21 22/22 23/3 23/4 24/1 24/8 25/17 25/24 48/22 52/7 52/8 52/11
Mr. Latka's [2] 12/1 17/15
Ms [2] 19/8 31/7
Ms. [33] 4/11 4/15 5/17 5/23 10/6 11/6 11/7 13/11 13/19 13/21 14/20 15/4 16/24 18/11 21/15 21/20 22/15 23/7 23/22 25/11 25/20 26/8 30/23 30/23 31/16 34/3 38/21 40/5 43/17 44/20 47/8 47/8 51/1
Ms. Bednarski [18] 4/11 5/23 10/6 11/6 13/11 13/19 14/20 15/4 16/24 18/11 21/15 21/20 22/15 23/7 23/22 26/8 30/23 47/8
Ms. Bednarski's [1] 25/20
Ms. Palmer [4] 5/17 13/21 31/16 40/5
Ms. Plato [1] 51/11
Ms. Weisberg [9] 4/15 11/7 25/11 30/23 34/3 38/21 43/17 44/20 47/8
much [14] 6/6 8/25 9/17 15/19 15/19 20/11 26/9 26/11 26/12 26/16 39/23 44/18 48/13 53/3
murder [1] 16/6
must [2] 37/16 46/2
my [21] 4/1 6/11 6/13 7/21 7/25 11/2 21/4 22/20 23/24 25/12 26/20 29/11 29/13 29/21 39/5 45/1 47/2 48/1 48/10 51/5 53/24

**N**

name [3] 10/18 10/24 26/3
names [2] 9/9 10/17
narrow [1] 51/1
near [1] 52/13
necessarily [3] 4/2 29/6 44/16

**N**

necessary [2] 27/22 44/8
need [17] 4/13 9/19 9/23 12/21 21/18
 26/13 32/22 34/13 34/19 35/11 35/19
 36/8 47/15 47/16 48/5 50/23 52/11
needed [3] 26/23 34/4 36/5
needs [3] 22/13 22/13 43/16
negate [1] 41/15
neighborhood [2] 49/5 49/21
never [1] 19/19
new [1] 25/11
news [1] 20/2
nice [1] 44/13
night [3] 6/1 11/10 29/10
Ninth [18] 37/8 40/12 41/13 41/25 42/4
 42/12 42/21 42/22 43/1 43/4 43/5
 43/19 44/18 45/12 45/14 45/16 45/21
 46/10
no [19] 1/8 3/20 5/18 11/11 11/19
 16/22 25/12 28/14 28/16 29/20 30/15
 32/17 33/24 34/24 35/4 48/7 50/10
 53/8 54/21
No. [16] 17/23 30/8 31/18 31/20 31/25
 32/18 34/11 35/7 36/19 40/6 41/19
 45/4 45/4 45/4 45/14 45/18
No. 10 [2] 30/8 31/18
No. 11 [1] 17/23
No. 13 [1] 35/7
No. 14 [1] 36/19
No. 15 [1] 40/6
No. 16 [1] 41/19
No. 3 [1] 45/4
No. 4 [2] 45/4 45/4
No. 5 [2] 45/14 45/18
No. 9 [4] 31/20 31/25 32/18 34/11
nobody [1] 8/2
Normally [1] 51/18
nos [1] 48/7
not [117]
note [2] 40/18 48/5
notes [1] 3/16
Nothing [1] 47/6
notice [4] 11/18 12/6 48/13 50/10
now [7] 14/15 15/19 15/24 18/25 27/14
 32/16 33/24
nullification [1] 15/3
number [7] 14/3 34/12 45/6 45/7 51/9
 51/20 51/22
numbered [1] 15/25
numbers [5] 24/12 32/6 48/12 51/6
 51/22

**O**

o'clock [2] 11/9 53/20
O'Malley [3] 42/1 44/15 44/17
object [2] 19/22 27/14
objecting [1] 6/12
objection [7] 9/22 12/5 12/7 12/22
 18/22 28/14 29/2
objections [4] 6/12 11/19 28/17 29/2
objects [1] 21/6
oblivious [3] 19/3 19/3 19/16
obnoxious [1] 49/8
obviously [6] 3/25 12/14 17/11 17/15
 28/4 51/21
occur [1] 24/20
October [2] 1/17 3/1

of it [1] 39/3
off [1] 39/15
offer [1] 28/3
offering [1] 28/6
offers [1] 5/16
officer [17] 7/18 7/25 9/15 9/16 16/7
 28/21 35/12 35/16 35/17 35/20 35/20
 35/24 36/5 36/7 36/9 36/17 39/2
Officer Ellsworth [1] 9/15
officers [2] 36/4 48/19
official [3] 1/21 36/1 54/21
often [1] 26/3
oftentimes [1] 43/25
oh [5] 10/19 16/20 35/4 35/8 45/4
okay [56]
old [1] 10/20
on [62]
once [1] 7/24
one [38] 4/23 5/1 8/6 8/19 10/13 11/17
 14/10 14/11 17/23 18/25 19/22 19/25
 22/6 22/14 23/9 25/3 25/8 25/23 26/3
 26/20 29/25 30/5 31/21 31/22 32/23
 32/24 34/9 34/10 41/7 41/17 42/10
 46/1 46/17 46/23 47/19 50/15 52/9
 53/16
ones [3] 24/13 29/21 46/16
only [12] 12/1 13/8 14/11 21/5 24/3
 29/20 31/22 37/15 43/10 43/22 50/3
 51/7
oOo [2] 3/2 54/3
open [1] 50/19
opened [1] 50/16
opening [5] 5/21 5/23 8/7 8/12 8/17
opine [1] 25/19
opining [1] 25/24
opinion [5] 16/15 18/8 19/15 22/9 49/7
opinions [16] 15/25 16/15 16/20 16/22
 17/22 25/20 26/6 26/14 26/22 26/24
 28/2 28/3 28/6 44/3 44/3 44/4
opportunity [3] 5/10 11/6 12/9
opposed [2] 7/13 42/6
or [75]
order [4] 6/13 9/20 48/6 53/18
ordered [1] 22/11
other [26] 4/19 4/23 8/7 9/8 10/13
 10/17 14/2 14/4 24/3 24/13 24/23 29/4
 29/25 34/10 39/2 40/11 41/17 44/3
 44/10 44/14 46/1 47/3 49/3 49/20 50/3
 50/7
others [2] 18/21 19/20
otherwise [3] 18/18 18/19 32/25
our [9] 5/5 5/6 5/6 8/22 15/20 34/11
 34/20 45/8 49/24
out [24] 7/21 13/4 14/3 17/21 21/21
 26/8 29/10 31/19 32/21 33/10 33/11
 33/13 36/12 36/14 38/3 40/11 42/23
 44/14 48/15 49/4 49/7 49/12 51/19
 52/25
over [7] 4/1 17/19 17/20 22/17 28/13
 46/15 48/4

**P**

packing [1] 50/9
page [11] 32/6 33/7 35/7 35/9 36/20
 36/21 37/24 41/5 41/6 45/19 54/11
PALMER [7] 2/3 3/7 5/17 13/21 31/7
 31/16 40/5
papers [2] 5/1 21/5

paragraph [1] 39/15
paragraphs [1] 45/25
part [2] 21/24 38/11
particular [2] 13/13 25/5
particularly [1] 46/3
parties [2] 6/1 28/14
Pasadena [1] 2/10
pass [3] 47/21 47/23 47/24
PAT [4] 1/21 54/7 54/20 54/21
patcuneo1600 [1] 1/24
Pause [6] 3/14 3/24 6/18 11/16 28/23
 42/8
people [9] 18/2 18/7 19/4 26/10 34/17
 43/22 48/19 49/5 49/20
people's [1] 49/9
perception [1] 18/20
performance [1] 36/1
perhaps [7] 16/2 17/24 20/8 20/17
 22/3 26/6 26/14
permits [1] 45/25
person [4] 24/3 36/6 36/7 45/20
personality [2] 20/1 20/7
persons [2] 36/11 43/24
perspective [1] 19/11
phone [2] 12/7 48/12
photographs [1] 14/1
phrase [4] 34/17 36/18 42/25 51/1
phrased [1] 8/15
pick [1] 52/14
Plaintiff [2] 1/7 2/2
plan [1] 20/13
planning [2] 9/16 51/6
Plato [1] 51/11
playing [1] 12/17
pleaded [1] 7/9
point [6] 14/3 20/8 25/3 46/23 47/2
 47/3
points [1] 26/8
popping [2] 8/19 10/19
position [2] 4/5 7/4 27/20
possibility [1] 20/7
possible [1] 48/13
possibly [2] 4/24 10/25
precise [1] 23/2
preclude [1] 7/16
prefer [1] 8/8
preference [3] 5/24 8/10 10/7
prefers [1] 10/9
prejudicial [1] 23/16
preliminary [3] 37/2 47/11 47/12
prepare [1] 49/18
prepared [3] 4/7 4/15 43/5
present [2] 3/11 3/12
presided [1] 17/19 17/20
PRESIDING [1] 1/4
presumably [1] 13/16
Pretrial [1] 1/19
pretty [3] 6/6 25/21 44/1
previous [1] 37/21
previously [4] 20/6 38/4 39/11 48/21
principles [1] 31/6
prior [2] 12/16 48/22
probably [10] 4/17 4/18 6/13 6/17 7/15
 14/16 15/21 23/8 34/6 49/14
probative [1] 23/17
problem [3] 3/19 19/22 38/5 38/23
 39/8 39/16 41/20 46/17
problematic [3] 27/9 27/11 27/16

**P**

problems [6]  15/20 24/23 28/11 29/5
29/21 49/15
proceedings [8]  3/14 3/24 6/18 11/16
28/23 42/8 54/1 54/10
process [2]  47/20 52/1
produce [1]  51/25
professional [1]  6/15
proof [2]  38/11 38/18
proposals [1]  47/15
proposed [4]  6/12 31/18 32/12 45/24
protect [2]  36/4 36/11
prove [10]  30/20 30/20 34/13 34/19
35/11 35/16 35/19 37/16 37/17 37/19
provide [1]  15/17
providing [2]  45/22 50/7
psychiatry [1]  26/10
psychology [1]  26/10
psychopathy [1]  20/1
public [1]  17/9
pull [1]  52/25
pulls [1]  16/7
purpose [3]  28/8 39/3 39/4
purposely [1]  42/13
purposes [1]  13/9
pursuant [1]  54/8
push [1]  15/21
put [6]  7/10 8/4 12/11 34/24 37/20
43/14
puts [1]  39/23
putting [2]  7/11 33/11

**Q**

qualified [1]  43/22
qualifying [1]  44/1
question [4]  9/3 47/10 50/13 50/21
questioning [3]  20/13 45/13 50/25
questions [4]  29/1 50/4 50/5 51/1

**R**

raise [2]  34/20 47/2
raising [1]  34/15
range [1]  51/9
rape [1]  24/20
rarely [1]  44/1
rather [2]  18/24 20/20
rea [7]  7/5 7/7 31/1 33/12 37/10 38/4
41/9
reaching [1]  31/12
reaction [1]  16/10
read [6]  21/5 25/3 31/14 47/11 47/13
52/25
reading [2]  23/21 43/9
reads [1]  37/13
ready [4]  4/4 4/17 4/18 52/2
really [15]  6/7 7/18 9/21 9/23 10/16
16/1 17/5 21/1 21/19 23/2 23/21 26/12
39/3 39/16 52/12
reason [4]  6/20 21/24 27/4 42/18
reasonable [5]  45/7 45/13 45/18 45/20
45/23
reasonably [1]  45/25
reasons [2]  26/21 39/10 52/11
recall [1]  23/6
receipts [4]  11/23 11/24 12/21 14/10
recklessness [1]  31/9
record [1]  11/21
records [2]  11/22 12/12

reference [3]  28/20 50/1 52/24
references [1]  15/3
referring [3]  7/17 41/22 46/12
regard [10]  3/17 5/8 6/10 14/18 15/7
18/11 26/18 27/16 27/18 29/13
regularly [1]  27/12
regulations [1]  54/12
relate [1]  14/9
related [1]  15/11
relationship [1]  26/9
relatively [1]  39/18
relevance [1]  16/10
relevant [4]  16/2 18/9 18/21 20/4
rely [4]  21/1 21/8 21/14 21/14
relying [1]  31/5
remove [2]  28/20 52/23
removed [1]  3/17
repeat [2]  23/2 44/25
repeatedly [1]  41/7
report [5]  18/12 27/5 28/4 28/7 28/8
reported [1]  54/10
reporter [1]  1/21 53/25 54/21
REPORTER'S [1]  1/14
representing [1]  3/12
required [2]  19/24 26/21
requirement [4]  6/24 6/25 31/2 39/12
research [1]  23/23
respect [16]  4/13 4/19 9/7 11/17 11/25
14/12 29/24 34/10 37/18 39/14 39/16
41/19 42/19 48/21 48/24 49/1
respected [1]  26/4
respond [1]  18/23
responding [1]  18/7
response [1]  19/20
responses [3]  19/4 19/16 19/19
rest [1]  46/20
restraints [1]  3/17
retreat [1]  18/24
reversed [1]  8/16
revised [1]  34/25
RICHARD [2]  1/9 3/5
Richard Douglas Latka [1]  3/5
right [40]  4/10 5/3 5/16 5/19 7/14 8/13
10/6 12/4 13/18 13/23 14/8 14/13
14/22 15/8 19/1 19/21 20/25 22/16
22/18 23/11 24/23 25/15 28/9 28/10
28/15 29/6 33/4 39/7 39/13 40/5 42/10
44/2 44/12 45/1 46/22 51/13 52/4 52/6
53/10 53/23
rights [1]  39/21
Rigid [1]  18/23
room [2]  1/23 14/15
Roybal [1]  1/22
rule [4]  23/7 23/8 25/16 26/25
ruled [4]  14/18 14/19 48/21 49/14
ruling [1]  14/19
runs [1]  53/19

**S**

safe [1]  11/4
said [21]  4/23 5/1 8/14 9/18 9/22 14/8
15/10 15/17 20/12 22/22 23/3 24/2
26/17 27/4 34/17 35/1 38/3 44/25
44/25 45/16 47/21
salient [1]  18/8
same [5]  8/23 12/25 23/7 24/5 26/25
satisfy [1]  31/10

refer [1]  33/2
saw [2]  35/1 36/6
save [1]  48/18
say [21]  4/18 7/24 7/25 10/7 10/16
13/25 16/12 18/25 20/11 23/14 25/3
32/1 33/17 34/4 34/5 37/8 44/8 44/14
45/2 50/12 52/14
saying [9]  10/19 17/24 21/8 22/21 23/1
26/11 33/1 42/17 45/15
says [13]  7/8 8/2 18/5 18/20 22/7
25/17 25/18 30/5 31/8 31/11 31/25
34/23 41/14
scientific [2]  43/15 44/9
scope [3]  4/13 4/14 48/24
seated [1]  3/3
second [5]  30/15 32/2 33/9 38/9 49/19
section [2]  7/8 54/8
see [8]  4/24 6/16 6/16 18/15 27/17
36/15 53/5 53/14
seeing [1]  53/4
seeks [1]  36/25
seem [2]  9/6 26/9
seemed [2]  28/13
seems [4]  6/8 51/6 51/7 51/15
seen [3]  11/8 13/3 27/8
selection [1]  47/22
self [1]  18/16
self-control [1]  18/16
send [1]  46/11
sending [1]  14/14
sense [4]  9/10 18/17 35/23 43/1
sensibility [1]  18/6
sensitive [1]  12/14
sent [2]  28/13 29/9
sentence [6]  8/16 33/2 35/14 35/14
35/19 45/24
sentencing [1]  15/3
separate [3]  31/20 32/21 37/13
serious [3]  6/24 30/18 30/20
Service [1]  7/17
set [1]  47/12
several [2]  21/3 40/11
shaking [1]  48/7
she [4]  8/14 8/15 19/9 21/17
she's [1]  52/13
short [1]  10/12
should [21]  6/9 6/13 6/17 7/5 29/8
30/2 30/17 31/22 33/2 34/15 40/19
40/25 41/1 41/4 41/11 44/22 45/2
50/20 50/20 52/2 53/7
shown [1]  31/24
sides [2]  47/23 47/24
sign [2]  48/11 53/5
significance [1]  42/14
simple [1]  41/14
since [5]  5/5 5/11 5/17 11/9 23/19
single [3]  8/22 21/19 37/18
sit [4]  21/22 22/5 24/1 48/20
sitting [1]  53/3
skilled [1]  17/12
slightly [1]  34/17
so [99]
social [1]  18/5
solution [1]  34/7
some [24]  3/16 6/20 8/4 12/6 12/16
15/2 15/2 16/1 16/10 16/15 17/16
20/16 22/3 22/10 25/22 36/8 41/8 43/9
44/9 46/25 47/2 48/19 48/22 48/23
somebody [4]  17/12 20/2 26/4 44/13

**S**

**somehow [2]** 20/3 49/22
**someone [2]** 27/12 40/15
**something [27]** 6/16 9/22 10/2 11/9
 15/10 15/12 18/3 20/9 20/12 22/24
 23/1 23/3 24/16 34/3 34/14 34/19
 34/23 35/1 35/5 36/7 42/15 43/1 43/16
 44/17 50/18 50/24 53/11
**sometimes [2]** 50/11 51/3
**somewhat [2]** 17/22 18/13
**somewhere [4]** 24/19 35/5 51/15
 52/22
**soon [2]** 22/19 52/3
**sorry [10]** 8/11 11/5 16/17 16/20 16/20
 21/11 30/17 33/15 35/8 47/22
**sort [7]** 7/2 12/6 21/21 30/25 36/8 36/8
 50/20
**spare [1]** 39/18
**speak [1]** 50/24
**speaking [3]** 12/1 20/20 52/20
**specialized [2]** 43/15 44/10
**specific [3]** 27/5 27/6 46/5
**specifically [2]** 19/17 50/5
**spend [1]** 4/1
**spoke [1]** 9/14
**spots [1]** 43/2
**Spring [1]** 2/5
**stand [3]** 23/4 49/16 52/21
**standard [4]** 38/3 38/16 40/21 40/23
**standing [1]** 53/18
**start [7]** 4/4 5/15 44/22 45/2 48/10
 48/20 50/12
**started [1]** 52/2
**starting [2]** 5/8 51/6
**state [7]** 6/19 9/22 17/2 19/5 19/13
 19/24 23/6
**stated [8]** 30/6 31/3 31/17 32/19 35/8
 35/8 36/21 39/10
**statement [15]** 5/21 6/2 6/17 8/7 9/20
 10/12 14/16 26/22 30/18 30/19 38/19
 38/20 44/17 44/18 45/9
**statements [7]** 12/14 12/18 12/18
 22/23 23/20 24/10 27/19
**states [13]** 1/1 1/6 2/2 2/4 2/5 3/4 3/7
 7/17 8/1 28/20 33/8 54/8 54/13
**statute [5]** 7/6 31/10 36/3 36/10 36/10
**statutory [1]** 30/25
**steered [1]** 44/15
**stenographically [1]** 54/10
**stick [1]** 44/10
**still [1]** 22/11
**Stop [2]** 8/25 30/10
**straightforward [1]** 41/14
**Street [2]** 1/22 2/5
**stressed [1]** 50/12
**strike [1]** 47/21
**strong [2]** 8/6 8/9
**structural [1]** 39/16
**structure [1]** 41/25
**stuff [3]** 22/16 22/17 27/21
**subjecting [1]** 23/18
**submit [11]** 23/17 29/8 34/9 34/22
 35/5 38/16 40/10 40/17 41/13 46/16
 46/21
**submitted [2]** 27/7 41/9
**subpoenaed [3]** 11/3 12/12 48/10
**such [3]** 31/3 35/21 38/18

**suffice [1]** 29/25
**sufficient [1]** 47/25
**suggest [2]** 33/22 37/3
**suggested [2]** 15/11 24/16
**suggestion [3]** 25/20 29/7 36/16
**suggests [1]** 14/17
**Suite [1]** 2/9
**summarize [1]** 22/12
**summarized [1]** 24/24
**supplemental [1]** 26/22
**support [1]** 37/6
**suppose [2]** 20/1 22/24
**sure [27]** 4/4 5/9 5/14 11/15 15/23
 16/1 16/9 17/21 17/25 18/20 18/21
 20/11 21/15 23/12 23/21 23/21 24/19
 24/24 27/23 29/17 40/21 43/16 46/13
 49/2 50/25 51/8 53/12
**surprised [1]** 49/24
**synthesis [1]** 28/14

**T**

**tab [1]** 32/9
**table [1]** 3/8
**take [10]** 3/16 13/19 14/16 25/1 26/14
 29/16 32/20 36/13 44/19 53/24
**takes [2]** 23/4 27/20
**talk [9]** 5/10 8/24 9/17 12/9 15/13 24/1
 29/9 40/11 53/13
**talked [2]** 24/4 46/14
**talking [3]** 18/16 49/3 52/12
**talks [3]** 37/25 38/1 38/17
**tangential [1]** 16/10
**taser [1]** 16/5
**tears [1]** 22/16
**teasing [2]** 33/9 33/13
**technical [2]** 43/14 44/9
**tell [7]** 15/18 17/6 17/18 25/8 32/6
 44/20 52/10
**telling [1]** 32/15
**Temple [1]** 1/22
**tend [1]** 42/19
**tendency [1]** 8/24
**term [2]** 6/20 41/10
**testified [6]** 16/23 17/3 21/25 27/12
 43/11 43/12
**testifies [3]** 13/9 23/4 25/17
**testify [12]** 7/13 19/12 21/13 23/9
 23/20 24/4 24/9 26/3 26/25 27/18
 27/19 27/21
**testifying [1]** 20/13
**testimony [7]** 16/3 18/14 22/11 23/14
 24/17 26/5 42/20
**tests [2]** 22/8 22/14
**than [11]** 9/8 11/4 17/12 17/19 17/22
 18/24 23/16 26/4 49/20 51/22 53/14
**Thank [10]** 3/22 9/13 10/5 19/10 28/9
 46/22 50/8 52/4 53/15 53/22
**that [341]**
**that's [35]** 3/21 4/24 5/6 7/2 7/13 7/19
 7/22 8/14 12/3 14/4 14/25 15/8 16/9
 16/14 18/21 18/25 20/1 21/24 22/16
 23/6 28/7 30/13 31/4 34/14 36/12
 37/10 37/15 37/22 38/12 39/6 41/15
 44/7 47/2 47/24 48/18
**the elements [1]** 19/24
**their [5]** 7/10 9/9 22/17 41/12 48/7
**them [26]** 7/15 12/13 16/1 21/4 21/14
 22/12 24/12 26/8 26/15 32/9 33/11

**34/17 42/16 43/11 48/11 48/13 48/14
 48/19 49/2 50/4 50/23 50/25 51/2
 51/18 52/2 52/3**
**themselves [1]** 29/1
**then [23]** 7/24 7/25 9/9 10/21 11/4
 14/24 19/25 24/3 24/13 30/7 31/21
 33/9 33/23 36/2 38/9 40/21 40/25 41/1
 41/3 50/18 51/5 51/14 52/6
**there [39]** 4/12 6/8 6/20 10/21 13/12
 14/10 15/1 15/12 15/12 22/5 22/24
 22/24 24/19 27/7 27/15 30/5 33/8
 34/12 34/18 35/1 36/6 36/23 37/8 38/1
 38/17 39/20 40/25 42/18 43/2 44/7
 44/14 46/4 46/23 49/6 49/7 50/21
 52/22 53/3 53/12
**there's [14]** 5/22 6/14 14/1 14/2 16/4
 16/10 21/5 23/19 36/16 37/12 37/13
 42/17 43/2 46/17
**therefore [1]** 27/22
**these [10]** 13/7 20/19 21/9 21/13 26/10
 36/24 39/18 44/19 49/3 49/12
**they [26]** 8/2 11/9 12/6 12/10 12/11
 13/13 13/13 22/7 22/17 32/20 36/12
 38/13 41/9 41/10 42/15 43/5 44/9
 48/11 50/3 50/6 50/9 50/12 50/21
 50/22 50/23 52/2
**they'll [2]** 10/18 12/22
**they're [10]** 12/1 12/13 13/25 16/1
 24/19 33/11 48/7 50/3 50/7 51/25
**thing [7]** 8/20 15/4 16/16 24/5 35/22
 47/19 53/16
**things [19]** 4/2 4/21 6/9 12/6 14/2
 21/13 22/10 24/2 25/8 26/11 27/24
 38/18 48/1 48/23 49/12 50/12 50/16
 51/19 53/13
**think [66]**
**thinking [3]** 18/23 21/2 21/3
**thinks [1]** 38/10
**third [3]** 14/10 14/11 33/9
**this [35]** 3/16 4/3 5/5 5/14 5/22 6/22
 7/6 8/5 10/12 15/16 16/4 16/16 17/10
 17/22 17/25 18/17 23/18 24/10 25/10
 25/23 26/21 36/22 37/14 37/20 39/25
 40/18 41/4 42/2 43/22 44/21 45/15
 46/4 48/15 49/22 53/2
**those [28]** 4/15 4/20 7/21 11/20 11/22
 11/23 12/5 12/8 12/12 12/17 12/18
 12/18 13/8 13/11 22/6 22/19 24/12
 24/24 25/1 26/5 32/22 36/12 43/4
 45/10 46/12 48/23 49/2 51/16
**though [1]** 17/19
**thought [5]** 19/17 26/25 27/9 27/10
 43/21
**thoughts [3]** 29/11 29/14 29/21
**threat [22]** 6/19 6/20 7/9 29/24 30/8
 30/18 30/20 31/22 31/24 32/20 33/8
 33/10 33/13 33/21 37/1 37/14 37/18
 37/19 38/7 38/25 39/4 39/12
**threaten [3]** 16/6 25/25 26/1
**threatening [1]** 40/14
**threats [7]** 6/23 18/21 33/16 33/19
 37/13 37/20 38/3
**three [7]** 14/9 31/20 31/24 32/21 32/24
 33/5 46/18
**through [6]** 8/19 16/12 16/18 21/4
 22/6 23/14
**thumbs [1]** 53/5
**time [14]** 5/13 5/17 5/20 8/2 17/17

**T**

**time... [9]** 21/22 23/13 26/23 27/8 28/5 29/7 49/18 49/19 51/18
**time-crunch [1]** 29/7
**tip [1]** 49/9
**title [2]** 7/25 54/8
**today [5]** 51/17 51/25 52/2 52/9 53/7
**told [2]** 48/18 50/11
**tomorrow [4]** 5/9 5/15 53/12 53/14
**ton [1]** 14/1
**tongues [1]** 49/9
**too [6]** 8/24 9/17 15/19 15/19 35/5 39/23
**topic [1]** 9/19
**totally [1]** 23/5
**touch [1]** 41/17
**toward [1]** 27/13
**towards [1]** 43/20
**transcript [5]** 1/14 13/3 13/5 54/9 54/11
**transportation [1]** 49/25
**traumatic [1]** 17/10
**treated [1]** 44/4
**trial [19]** 4/4 4/23 5/9 6/13 8/19 9/9 9/11 14/17 34/11 34/20 35/3 36/16 38/2 43/23 48/4 49/18 52/7 52/7 53/19
**tried [2]** 17/19 40/11
**true [2]** 27/2 54/9
**truthfully [1]** 50/22
**try [5]** 13/14 17/18 20/17 42/1 48/14
**trying [6]** 7/2 40/15 44/10 50/8 51/19 51/23
**turn [1]** 48/15
**turning [1]** 30/4
**tweak [1]** 7/15
**two [10]** 5/2 8/18 11/20 12/6 13/12 32/24 36/23 36/24 38/3 45/25

**U**

**U.S. [1]** 31/3
**U.S. v [1]** 31/3
**ultimate [1]** 19/12
**unanimity [1]** 29/2
**under [2]** 11/18 40/23
**underestimated [1]** 4/22
**understand [5]** 7/20 21/10 41/22 48/23 50/3
**understandable [1]** 17/22
**understanding [6]** 11/2 25/12 26/20 26/24 39/5 45/23
**understands [1]** 19/19
**understood [2]** 41/10 47/20
**UNITED [12]** 1/1 1/6 2/2 2/4 2/5 3/4 3/7 7/17 7/25 28/20 54/8 54/13
**unless [6]** 10/1 14/3 23/3 43/11 52/20 53/11
**unlike [1]** 15/16
**unnecessary [1]** 37/5
**until [4]** 7/11 25/16 26/16 53/13
**up [11]** 7/2 8/19 12/9 23/5 31/24 40/16 46/24 49/13 49/16 52/14 53/5
**updated [1]** 5/11
**upon [1]** 13/4
**us [4]** 3/8 19/6 42/14 51/25
**use [15]** 12/10 13/14 18/25 32/16 32/17 35/19 40/7 40/8 40/8 40/14 41/10 41/24 42/13 43/10 45/3

**used [4]** 6/20 9/9 21/18 29/24
**useful [3]** 36/12 38/18 42/1
**useless [1]** 15/17
**uses [1]** 37/4
**using [3]** 7/19 43/11 45/5
**usually [1]** 38/18

**V**

**vague [1]** 25/7
**various [2]** 25/7 52/11
**vary [2]** 46/6 46/8
**verdict [2]** 28/19 29/3
**version [1]** 40/7
**versus [2]** 16/4 46/18
**very [14]** 15/20 15/24 19/10 24/8 29/4 30/12 38/12 38/15 43/15 44/10 50/12 52/9 53/2 53/3
**victim [1]** 7/20
**Victoroff [20]** 4/14 16/25 20/13 21/1 21/25 22/2 23/15 23/25 24/7 24/9 25/2 25/10 25/17 26/16 26/21 27/6 27/10 27/22 42/23 43/10
**Victoroff's [1]** 27/5
**view [2]** 18/19 22/20
**viewed [1]** 30/19
**views [1]** 23/20
**violating [2]** 14/23 50/22
**Virginia [2]** 31/4 38/2
**visiting [1]** 49/15
**voice [1]** 52/20
**voir [9]** 4/19 5/21 8/7 8/12 8/17 10/13 28/10 28/12 47/20

**W**

**wait [2]** 30/10 36/15
**waive [1]** 45/10
**want [19]** 7/10 10/19 22/16 28/4 29/13 29/20 32/16 32/17 44/2 44/21 44/22 45/10 46/15 49/2 49/11 51/8 52/15 52/19 52/24
**wanted [4]** 11/19 21/7 34/20 39/21
**wants [3]** 21/9 38/8 46/24
**was [88]**
**wasn't [3]** 20/17 20/19 31/5
**way [5]** 5/25 6/7 8/6 8/15 10/8 10/13 23/22 24/25 27/6 36/12 48/5 51/2
**we [68]**
**we'd [2]** 8/16 13/24
**we'll [6]** 8/21 23/24 51/3 52/3 53/14 53/24
**we're [6]** 3/11 4/4 4/17 9/18 40/17 51/18
**we've [3]** 6/22 15/23 46/14
**weekend [3]** 4/1 4/2 28/13
**weight [1]** 42/20
**WEISBERG [11]** 2/8 3/11 4/15 11/7 25/11 30/23 34/3 38/21 43/17 44/20 47/8
**Weisberg's [1]** 19/8
**welcome [1]** 3/23
**well [25]** 3/25 4/18 7/15 10/10 13/25 17/16 17/18 19/10 19/21 20/25 21/16 25/13 26/4 28/1 29/6 34/5 35/22 40/1 43/25 44/3 44/13 44/24 46/10 50/15 53/11
**well-respected [1]** 26/4
**were [16]** 3/25 4/3 5/17 5/20 7/7 9/15 17/17 17/23 25/8 26/24 31/5 34/11

41/22 48/11 49/24 54/1
**weren't [1]** 49/5
**WESTERN [1]** 1/3
**what [64]**
**what it [1]** 43/13
**what's [1]** 5/12
**whatever [6]** 7/24 10/9 12/13 43/23 49/11 50/7
**whatnot [2]** 39/22 49/25
**when [14]** 4/23 13/18 15/1 18/15 24/20 34/11 37/21 42/15 43/9 48/9 48/10 50/12 52/12 52/23
**where [3]** 38/13 46/5 52/13
**Whereas [1]** 39/3
**whether [7]** 4/4 9/21 22/1 22/2 23/9 47/10 49/20
**which [34]** 6/7 6/13 7/6 9/8 10/2 11/22 16/5 18/12 20/25 21/1 21/21 21/21 23/4 28/13 28/19 29/4 30/5 30/8 31/24 32/18 33/7 33/10 35/7 35/9 35/15 36/19 37/7 43/20 45/6 45/7 45/18 46/16 49/15 51/6
**whichever [1]** 50/25
**while [1]** 35/25
**whittle [1]** 26/15
**who [6]** 10/16 21/25 27/12 43/20 43/22 50/11
**who's [3]** 3/12 17/12 24/3
**whole [7]** 15/23 18/12 27/7 27/20 28/7 35/22 39/17
**whom [2]** 19/4 48/19
**why [16]** 7/13 7/18 12/11 21/24 29/12 31/4 33/10 33/22 36/12 39/6 43/14 43/16 44/7 44/20 46/11 53/11
**wife's [1]** 24/20
**will [46]** 4/13 7/10 8/4 10/13 10/16 10/17 10/24 12/7 14/6 14/16 14/23 15/6 15/18 15/21 15/22 16/2 16/15 17/21 18/10 18/15 21/1 21/4 21/12 21/21 22/7 22/11 22/19 23/12 23/13 24/14 28/20 31/14 31/14 32/25 40/10 42/24 46/4 46/13 46/20 48/10 51/1 51/7 51/16 53/1 53/6 53/12
**WILLIAMS [2]** 2/4 3/8
**willing [2]** 40/17 48/11
**without [5]** 5/9 7/3 12/22 23/18 50/22
**witness [3]** 11/18 12/21 43/20
**witnesses [20]** 4/8 4/20 5/5 5/6 8/22 9/6 10/15 10/16 14/9 44/4 48/10 49/2 49/2 49/12 49/21 49/24 50/2 50/11 50/18 52/19
**won't [5]** 15/17 23/20 23/25 24/9 46/15
**word [4]** 42/13 42/15 42/17 42/22
**words [6]** 7/21 23/2 30/19 34/13 34/17 34/19
**wordy [1]** 7/3
**work [2]** 24/5 51/7
**worked [1]** 13/4
**working [2]** 3/25 4/2
**worth [1]** 49/15
**would [64]**
**wouldn't [4]** 27/15 27/17 40/3 43/11
**wrangling [1]** 6/22
**wrap [1]** 46/24
**write [1]** 24/12
**wrong [1]** 44/15
**www.patcuneo.com [1]** 1/25

## Y

**yelling [1]**  39/1
**yes [40]**  4/9 5/4 8/3 8/23 9/1 9/14 9/25
10/4 10/19 10/22 12/3 12/24 13/2
13/17 13/22 14/5 17/1 17/7 17/14 19/7
19/14 20/5 21/7 21/12 26/19 28/24
29/15 30/11 30/24 32/5 32/8 32/11
38/22 39/10 42/7 42/11 47/9 51/12
53/17 53/21
**yet [3]**  3/12 14/18 23/24
**you [136]**
**you're [15]**  3/23 6/15 7/24 8/18 9/23
18/25 30/14 33/17 36/14 45/4 46/12
52/12 52/16 52/20 53/2
**you've [5]**  13/20 20/25 44/24 44/25
50/23
**your [76]**

## Z

**zero [1]**  22/7